# SCHOOL COMMITTEE OF FRANKLIN *vs.* COMMISSIONER OF EDUCATION & others[1]
## (and a companion case[2]).

Norfolk. Suffolk. November 10, 1982. — April 5, 1984.

Present: ARMSTRONG, CUTTER, & SMITH, JJ.

*Education*, Special educational needs. *School and School Committee*, Special educational needs, Reimbursement for special educational needs. *Administrative Law*, Hearing, Judicial review, Decision. *State Administrative Procedure Act. Practice, Civil*, Special education appeal, Complaint. *Statute*, Federal preemption.

A hearing before the Department of Education, as part of the process for determining a school committee's obligation to reimburse expenses of a student with special educational needs, was required as matter of constitutional right and therefore was "adjudicatory" within the meaning of G. L. c. 30A, § 1, where, by reason of the supremacy clause of the Federal Constitution, applicable provisions of a Federal statute mandating such a hearing superseded any discretion the department may have had in that regard under G. L. c. 71, § 3, twelfth par. [688-690]

A school committee was entitled, by virtue of 20 U.S.C. § 1415 (e) (2), to de novo judicial review of a decision by the Department of Education requiring it to reimburse the private school expenses of a child with special educational needs, and the Federal statute preempted any provisions of the State Administrative Procedure Act which would limit the scope of judicial review. [690-692]

The fact that a complaint seeking judicial review of a decision of the Department of Education was framed under G. L. c. 30A, § 14, did not preclude a party from claiming a hearing de novo to which it was entitled under Federal statute. [692]

Where, by leave of court granted during the pendency of an action for judicial review of an administrative agency's decision, the agency withdrew the decision, and replaced it with a substantively different one which was filed in the pending action, there was, in the circumstances, no need to commence a new action for judicial review of the substituted decision, nor any merit to the contention that the action was untimely. [692-693]

---

[1] A hearing officer of the Bureau of Special Education Appeals and Arthur and Dorothy B., parents of a special needs child.

[2] Arthur B. and another *vs.* School Committee of Franklin.

Parents of a child with special educational needs were not entitled to reimbursement by the local school committee of the expenses of their child's private school education, where neither the Department of Education, nor the judge who heard actions for judicial review of the department's decisions, made findings that an appropriate program could not be formulated in the child's public school and that the private school placement was the least restrictive program for the child. [693-698]

CIVIL ACTIONS commenced in the Superior Court on December 6, 1976, and January 11, 1980, respectively.

The cases were heard by *Zobel*, J.

*Paul G. Murphy* for the parents.

*Judith S. Yogman*, Assistant Attorney General (*Charles E. Walker, Jr.*, Assistant Attorney General, with her) for Commissioner of Education.

*C. Peter R. Gossels* for School Committee of Franklin.

ARMSTRONG, J. These are appeals from judgments in two actions: first, an action brought by the school committee of Franklin challenging a decision by which the Department of Education (department) determined that Franklin was obliged to pay for the education of a special needs child at a private school, Leland Hall, during the 1974-75 and 1975-76 school years; and, second, an action brought by the parents of the special needs child against the school committee for reimbursement of amounts paid by them for the private school education. The actions were consolidated for trial. The judge, over the objections of the department and the parents, permitted the school committee to introduce evidence in addition to the record of proceedings before the department and determined on the basis of that evidence that "Leland Hall was at no time an appropriate alternative private placement for the student in question." Judgments were entered dismissing the parents' action for reimbursement and declaring (in the school committee's action) that the town was not responsible for bills incurred at Leland Hall. The cases are before us on appeals by the department and the parents.

The alleged liability has its source in the "Chapter 766" program (G. L. c. 71B, as amended, originally inserted by St. 1972, c. 766, § 11), which became effective September 1, 1974. The child, Kevin, had attended the Franklin public

schools through third grade; but in the summer of 1974, at the suggestion of a learning disabilities specialist who had tutored Kevin in the Franklin schools, his parents enrolled him in a remedial program at Leland Hall. The parents continued him there as a full-time student in September, and he remained there through the 1974-75, 1975-76, and 1976-77 school years. In 1977-78 the parents transferred him to another private day school.

In June, 1974, in anticipation of the effective date of the Chapter 766 program, the Franklin school staff prepared individualized education plans for Kevin and other students who had previously received special education services. The process was non-participatory; when Kevin's parents were shown the plan in August, they sought reevaluation. They met with school officials in September and requested that formulation of a new plan be delayed until certain evaluation reports were forwarded from Leland Hall. There were delays in forwarding the reports. The last were finally received on January 27, 1975. A formal evaluation conference took place on February 13; the resulting plan was sent to the parents March 5, 1975. The plan called for Kevin to spend forty percent of his time in the regular program and sixty percent in a special education resource room in the Franklin school.

The parents rejected the plan on April 15 and again on May 14, after a period for informal resolution of differences allowed by a departmental regulation (see now 603 Code Mass. Regs. § 400.0 [1979]), and they invoked the jurisdiction of the department under G. L. c. 71B, § 3. A hearing was held on November 20, 1975. Some time in April, 1976, the parties received notice of the hearing officer's findings and recommendations. These were, in essence, that Kevin's relatively mild learning disability did not call for a program so restrictive[3] as

---

[3] The concept of "restrictiveness" is built around the statutory preference for "mainstreaming" learning-handicapped students to the maximum extent consistent with their educational needs. The departmental regulations elaborate the concept. See 8 Code Mass. Regs. Part 3, §§ 324.2 & 333.1(b) (1974); see now 603 Code Mass. Regs. §§ 111.0, 322.2 & 502.0-502.9 (1981). See also *Isgur* v. *School Comm. of Newton*, 9 Mass. App. Ct. 290, 299-300 (1980). The Federal Aid to All Handicapped Children Act, 20

that proposed by the school committee or that offered at Leland Hall and that the school committee should formulate a new plan for Kevin which would keep him in the regular education program for a greater part of the day, supplemented by personal tutorial instruction with reading aid and perceptual training. The hearing officer also stated, however, that "until Franklin designs an appropriate plan for Kevin . . . he may remain at Leland Hall at Franklin's expense."

On December 6, 1976, the school committee filed its complaint in the Superior Court, seeking to have the hearing officer's decision quashed on a variety of procedural and substantive grounds and seeking declaratory relief regarding the authority of the department to order school committees to reimburse parents for private educational placements not directed by public officers.[4] The department moved to dismiss the complaint on the ground that the proceeding before the department was adjudicatory and that, in accordance with G. L. c. 30A, § 14, any complaint seeking judicial review had to be filed within thirty days. The motion to dismiss was allowed, but the school committee was given leave to file an amended complaint. The amended complaint was not different in substance from the original complaint, and both the department and the parents moved for its dismissal. That motion was denied on March 31, 1977.

On April 21, 1977, the department filed a motion asking that the case be remanded to it for the issuance of a substitute decision, to include, inter alia, "[f]indings consistent with the [d]epartment['s] . . . interpretation of issues regarding retroactive payment for private placements." The motion was al-

U.S.C. § 1401 et seq. (1976), also favors mainstreaming learning-handicapped children. See *Doe* v. *Brookline Sch. Comm.*, 722 F.2d 910, 916 (1st Cir. 1983).

[4] It was not until September 28, 1978, that the case of *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480 (1978), established the potential liability of a school committee to reimburse parents if it should ultimately be determined that the proper placement for their child under the department's regulations and policies coincides with the private placement choice previously selected by the parents. *Id.* at 493 and n.8.

lowed, and a substitute decision was rendered December 4, 1978, by a different hearing officer, based on the transcript of testimony before the first hearing officer and documents introduced in that hearing. The substitute decision differed from the original decision in several substantial respects. For present purposes, we note these differences: (1) that it focused exclusively on determining the liability of the school committee to reimburse the parents for the 1974-75 school year, rather than on the formulation of a prospective plan for Kevin's education; (2) that it stated that Leland Hall "was appropriate for Kevin," explaining, however, that that statement represented only a determination that Leland Hall was capable of offering the types of programs needed by Kevin and did not represent a determination that the Leland Hall plan was adopted as the least restrictive placement alternative called for by the departmental regulations (see note 3);[5] and (3) that it ordered the school committee to reimburse the parents for Kevin's private school expenses for the entire 1974-75 school year. (The earlier decision had arguably ordered the school committee to assume financial responsibility only prospectively from the date of decision.)

After the substitute decision of December 4, 1978, was returned to court, the parents filed a motion for a second remand "for the purpose of allowing the hearing officer to determine whether the liability established under his substitute decision shall be binding not only for the years 1974-75, but for continuing years through the 1978 school year." That motion was allowed on April 23, 1979, and the matter came again before the same hearing officer who had rendered the previous remand decision. This time an evidentiary hearing was had,

---

[5] The text of the qualification was: "This decision does not adopt the Leland Hall Plan as the educational plan for Kevin. Rather, I find that Franklin's failure to provide an adequate plan required the hearing officer to consider other alternatives. The only alternative on the record was placement at Leland Hall. Leland Hall was approved and appropriate for the level and type of needs exhibited by Kevin. I do not adopt the plan of Leland Hall. The responsibility for the plan lay with Franklin, but in the absence of an adequate plan by Franklin, I can and did turn to an appropriate alternative."

apparently confined to the question of cooperation between the parents and the school committee after the department's original decision in March of 1975. The second remand decision (July, 1979) left the first remand decision undisturbed (as to the school committee's liability for the 1974-75 school year); determined that the school committee was liable to the parents (based on a finding that the parents had been cooperative with the school committee until April, 1976) for the Leland Hall expenses in the school year 1975-76; and determined that the school committee was not liable to the parents (based on a finding of non-cooperation after April, 1976) for the two succeeding school years.

The parents did not seek further review of that decision, nor did they seek reimbursement for the later school years in their separate action for reimbursement. Consequently, by the time the consolidated cases came on in the Superior Court for hearing on the merits, the sole issue was the liability of Franklin to reimburse Kevin's parents for their Leland Hall expenses for the 1974-75 and 1975-76 school years: a sum amounting to roughly $7,200.

Two weeks before the hearing, on July 15, 1980, the school committee filed a motion that the court not confine the hearing to the agency record, in keeping with the usual practice (see G. L. c. 30A, § 14[5]), but instead, in accordance with the provisions of 20 U.S.C. § 1415(e)(2) (1976), receive additional evidence "concerning the management, staff, population, facilities, and curriculum offered by the Leland Hall School during the 1974-1976 school years." Over the opposition of the department and the parents, the judge allowed the motion. This ruling was to prove decisive to the judge's disposition of the case, as he found, on the basis of the evidence so received, that Leland Hall lacked direction and form, that its teaching staff was inadequate, and that its pretensions to capabilities in dealing with learning-handicapped children were greatly overblown.

In these appeals from the ensuing judgments, all parties have assumed that the proceedings before the department were "adjudicatory" within the meaning of G. L. c. 30A, § 1, and

that the school committee, as an aggrieved party, could take an appeal from the departmental decision to the Superior Court under the provisions of G. L. c. 30A, § 14. Three cases have intimated as much, although without discussion of the point: *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 495, 498 (1978), *School Comm. of Brookline* v. *Bureau of Special Educ. Appeals,* 389 Mass. 705, 714, 715, 716 (1983), and *Isgur* v. *School Comm. of Newton*, 9 Mass. App. Ct. 290, 294 n.13 (1980). The point cannot be considered obvious, because a proceeding before an agency is not considered to be "adjudicatory" under the State Administrative Procedure Act unless the opportunity for an agency hearing is "required by constitutional right or by any provision of the General Laws." G. L. c. 30A, § 1(1). See *Hayeck* v. *Metropolitan Dist. Commn.*, 335 Mass. 372, 373-375 (1957); *School Comm. of Hatfield* v. *Board of Educ.*, 372 Mass. 513, 516 (1977). Under G. L. c. 71B, § 3, twelfth par., while the department "may" hold a hearing, it is not clear that it is required to do so.[6]

---

[6] The department contends that the hearing before the bureau of special education appeals is adjudicatory because the departmental regulations mandate that it be held on request of either the parents or the school committee. Under G. L. c. 30A, § 1(1), however, the hearing has to be mandated by constitutional right or by the General Laws.

The provision of G. L. c. 71B, § 3, twelfth par., that a hearing, if held, "be held in accordance with the provisions of chapter thirty A", is most naturally read as an incorporation of those aspects of adjudicatory procedure relating to the conduct of the hearing at the agency level, such as the rights to notice, to participate and be represented by counsel, to a record of the proceedings, and perhaps to a statement of reasons. The judicial review provisions of § 3 are difficult to reconcile with those of G. L. c. 30A, § 14, governing judicial review of adjudicatory proceedings. Only the parents, for example, have a right under § 3 to seek judicial review of the department's recommendations; unless the department's recommendations are rejected by the parents, the school committee is required to carry them out. If the department agrees with a school committee that a child should receive special education, and the parents want the child kept in the regular curriculum (the converse of the situation in this case), the parent's remedy is not found in judicial review: rather, they may disregard the departmental recommendation, and it is the school committee (which agrees with the departmental recommendation) which must seek judicial sanction to deny the parental demand (§ 3, twelfth par.). When the parents seek special

The parents are, however, given a clear right to "an impartial due process hearing" by § 1415(b)(2) of the Federal Education for All Handicapped Children Act, 20 U.S.C. § 1401 et seq. (1976). Section 1415 of that Act applies to any State or local educational agency which receives assistance under the Act. *School Comm. of Brookline* v. *Bureau of Special Educ. Appeals*, 389 Mass. at 715. The case has been argued on the basis that both the department and the school committee receive assistance under the Act. Under the supremacy clause of the United States Constitution, the Federal requirement that a hearing be afforded supersedes any discretion given the department in that regard by G. L. c. 71B, § 3, twelfth par. In that sense, at least, a departmental hearing is "required by constitutional right," thus bringing the departmental proceedings within the definition of "adjudicatory proceeding."

A conclusion that the departmental proceedings are adjudicatory, however, does not necessarily establish that judicial review will proceed along the usual path. General Laws c. 30A, § 14, as appearing in St. 1973, c. 1114, § 3, states that "[w]here a statutory form of judicial review or appeal is provided such statutory form shall govern in all respects, except as to standards for review. The standards for review shall be those set forth in paragraph (7) of this section, except so far as statutes provide for review by trial de novo." To the extent that judicial review is available at all under G. L. c. 71B, § 3, it is not at all clear that review is not by trial de novo (see note 6, *supra*). Here again, however, the Federal statute makes clear what State law leaves murky: Under § 1415(e)(2), "[a]ny party aggrieved . . . shall have the right to bring a civil ac-

---

education in services beyond those recommended by the department, the court's role is described in language suggestive of de novo review (the "court shall be authorized to order the placement of the child in an appropriate educational program" [§ 3, thirteenth par.]). Indeed, the hearing officer's function is expressed in words (he "may recommend alternative educational placements to the parents" [§ 3, twelfth par.]) not suggestive of an agency decision in an adjudicatory proceeding, and the provision in the same paragraph for consultation by the hearing officer with advisory bodies after the conclusion of the hearing and before decision may be difficult to reconcile with traditional constraints on the role of quasi-judicial hearing officers.

tion . . ., which action may be brought in any State court of competent jurisdiction or in a district court of the United States. . . . In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." This section "contemplates a 'de novo review role by the . . . courts, including . . . an independent decision by the . . . [court] based on the preponderance of the evidence.'" *School Comm. of Brookline* v. *Bureau of Special Educ. Appeals*, 389 Mass. at 715, quoting from *Kruelle* v. *New Castle County Sch. Dist.*, 642 F.2d 687, 692 (3d Cir. 1981).

The department, understandably reluctant to accept the more invasive standard of review under § 1415(e)(2), urges that we apply the line of cases that reject preemption of State law by Federal law where a showing has not been made of irreconcilable conflict between the two. See *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142 (1963); *Grocery Manufacturers of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 80-82 (1979). When "'Congress has unmistakably so ordained,'" however, the State law must give way even if harmonious with the Federal law. *Commonwealth* v. *Federico*, 383 Mass. 485, 489 (1981), quoting from the *Florida Lime* case at 142. Under either principle, the Federal standard of review must prevail. By § 1415(e)(2), Congress has unmistakably required that State courts provide de novo review of departmental decisions; and to the extent that State law may provide for review under G. L. c. 30A, § 14, a provision precluding the reviewing court from receiving relevant evidence and deciding the case on a preponderance-of-the-evidence standard would be in a direct conflict with the requirements of the Federal law. It has been so held in *Burlington* v. *Department of Educ.*, 655 F.2d 428 (1st Cir. 1981), and in *Doe* v. *Anrig*, 692 F.2d 800, 805 (1st Cir. 1982). The *School Comm. of Brookline* decision (389 Mass. at 714-716) is not to the contrary. That decision sustained a ruling by the judge in effect denying the school committee leave to present evi-

dence that the passage of "Proposition 2½" (St. 1980, c. 580) had impaired its financial ability to meet the requirements of c. 766. The holding was put on the basis of relevance, the court stating that "we do not read Proposition 2½ as excusing noncompliance with c. 766." 389 Mass. at 715.

The department further contends that the preponderance-of-the-evidence standard should only apply in a case where judicial review is originally sought under § 1415(e)(2), arguing § 1415(e)(2), by its own terms, applies only to cases "brought under this paragraph." Where the action purports to be brought under G. L. c. 30A, § 14, the department contends, review should be according to the standards of that section. The complaint in this case did not purport to be brought under either section.[7] If it had, we would not think it consonant with the Massachusetts Rules of Civil Procedure to treat such a statement in a complaint as a binding waiver of legal rights. See *Charbonnier* v. *Amico*, 367 Mass. 146, 152-153 (1975). It has been held that, under our rules, a complaint "is sufficient . . . if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate." *Nader* v. *Citron*, 372 Mass. 96, 104 (1977). The essence of the school committee's complaint was that it sought judicial review of the department's decision. If the school committee was then entitled to such review, that complaint would not foreclose any form of review to which the committee was entitled by law. The school committee's right to present evidence was sufficiently invoked by its motion for leave to do so filed in advance of the hearing.

The department and the parents contend that the action by the school committee should have been dismissed as untimely. Here they argue that the thirty-day limitations period applicable under G. L. c. 30A, § 14, controls as well actions for judicial review under 20 U.S.C. §1415(e)(2). Such actions are not restricted by any Federal statute of limitations. In such circumstances a Federal court would apply the most analogous

---

[7] It purported to be brought under G. L. c. 231A (declaratory relief) and under G. L. c. 249, § 4 (relief in the nature of certiorari).

State statute of limitations. For purposes of this case, we assume, without deciding, that the applicable statute of limitations is thirty days. See *Department of Educ., State of Hawaii* v. *Carl D.*, 695 F.2d 1154, 1156-1158 (9th Cir. 1983). Contrast *Tokarcik* v. *Forest Hills Sch. Dist.*, 665 F.2d 443, 447-455 (3d Cir. 1981), cert. denied sub nom. *Scanlon* v. *Tokarcik*, 458 U.S. 1121 (1982); *Monahan* v. *Nebraska*, 491 F. Supp. 1074 (D. Neb. 1980), affd. in part and vacated in part on other grounds, 645 F.2d 592 (8th Cir. 1981). The point is not dispositive, however, because the decision as to which review was not timely sought, that of April 9, 1976, was withdrawn by the department on leave granted by the court, and a new decision was substituted on December 4, 1978. That decision was not merely the earlier decision augmented by further findings; it was substantively different from the earlier decision. For the first time the department found (albeit with qualifications) that Leland Hall was "appropriate" for Kevin, and for the first time ordered the school committee to reimburse the parents for the portion of the 1974-75 school year prior to the rendering of the first decision. The new decision could have been the subject of a new action; instead, it was filed in the pending action, and all parties and the court assumed that the decision could be challenged in the pending action without the necessity for bringing a new proceeding. In the circumstances it was not ground for dismissal that the action was brought before the decision came down. Compare *Girard* v. *Board of Appeals of Easton*, 14 Mass. App. Ct. 334, 337-338 (1982). The same reasoning applies to the second remand decision, whether that decision is regarded as a supplementary decision or a substitute decision.

Turning to the judge's findings and conclusions, we find that the department's and the parents' principal remaining objection is that the judge did not give sufficient consideration to the agency record but decided the case exclusively on the additional evidence received in court. The objection finds little support in the judge's careful analysis of the weight to be accorded the agency record. The judge anticipated the holding

in *Board of Educ. of Hendrick Hudson* v. *Rowley*, 458 U.S. 176 (1982), reasoning that the requirement in § 1415(e)(2) that "the court shall receive the records of the administrative proceedings" implies that the agency judgment be accorded weight. The judge may have gone the *Rowley* case a step better by according the agency decision prima facie weight, having binding effect until refuted by other, more persuasive evidence in a manner analogous to masters' findings in jury actions (see *New England Acceptance Corp.* v. *American Manufacturers Mut. Ins. Co.*, 4 Mass. App. Ct. 172, 177 [1976]), or District Court decisions in retransfer cases (see *O'Brion, Russell & Co.* v. *LeMay*, 370 Mass. 243, 244-245 [1976]).

To a large extent the department, in contending that Leland Hall was appropriate for Kevin, is forced to rely on evidence introduced at the department's hearings rather than on the findings of its hearing officers. In the circumstances the judge cannot be faulted for having placed more reliance on evidence he heard than on evidence introduced at departmental hearings and not made the subject of agency findings. Unlike the second hearing officer, the judge had the advantage of hearing the testimony of Leland Hall's sole full-time teacher. There was also uncontradicted evidence that the department itself had denied Leland Hall eligibility as a Chapter 766 resource school during a portion of the time for which the second hearing officer ordered reimbursement.

It is not clear that the parents would have had a right to reimbursement even if the departmental findings had been sustained. This case is different from the *Amherst-Pelham* case, where the hearing officer apparently determined, in the context of a prospective placement determination, that the public school system did not have available to it the resources to devise a program of the type which would meet the child's needs and that the private school to which the parents had sent the child was the appropriate placement for the child under the least-restrictive-placement approach of the departmental regulations. "In these circumstances, the departmental policy requiring reimbursement places the parent and child precisely where they would have been had the school committee initially ful-

filled its statutory obligations in evaluating the child." *Amherst-Pelham*, 376 Mass. at 493. In the present case, by contrast, there has been no finding that an appropriate program could not have been formulated in the public school (the first hearing officer found that it could), and neither hearing officer found that the Leland Hall placement was the least restrictive program prototype mandated by the departmental regulations. Under G. L. c. 71B, § 3, "private placements are authorized only when the appropriate special education program . . . is not available within the public school system. . . [T]he statute does not permit the reimbursement of money which is spent for a child who unilaterally enrolls in a private school. The private placement provisions of c. 766 only apply to a child who seeks services in the public school system and who is then identified as requiring special services which the school system either cannot, or chooses not to, provide." *Commonwealth* v. *School Comm. of Springfield*, 382 Mass. 665, 677 (1981).

The departmental regulation governing reimbursement,[8] promulgated after the decision in the *Amherst-Pelham* case, may be read consistently with the policy of the act as described in that case and in the *Springfield* case. The second hearing officer read it more broadly, treating as "appropriate" any program selected by the parents which offers services of the types found to be required by the child, whether or not the program is the one that would comply with the mainstreaming

---

[8] 603 Code Mass. Regs. §§ 504.5(f) (1978): "If a child's parent enrolled the child in a Division-approved private day school or residential school program and appealed the child's IEP [individualized education plan] to the Bureau of Special Education Appeals or the SAC [State Advisory Commission on Special Education] under Chapter 4, and the Bureau of Special Education Appeals or the SAC determines that the IEP developed by the school committee is inadequate and the parent's choice of placement is appropriate, the school committee shall pay the full cost of instruction and support actually rendered or furnished to such child by the private school, retroactive to the date the inadequate IEP was rejected by the parent or could reasonably have been expected by the parent. The school committee shall enter into an agreement or contract with the private school, and shall report to the appropriate Regional Branch Office of the Division that the placement has been made."

policy of the statute and the regulations. So construed, the regulation would not "place the parent and child precisely where they would have been" if the placement ultimately recommended by the department had been originally recommended by the local school administration. The hearing officer's construction would, in effect, "result[ ] in a private appropriation of public monies." *Doe* v. *Brookline Sch. Comm.*, 722 F.2d 910, 916 (1st Cir. 1983). Compare *Opinion of the Justices*, 337 Mass. 777, 784 (1958). We think the word "appropriate" in the regulation (see note 8, *supra*) must be read as indicating the program which the department ultimately adopts (subject, of course, to judicial review) as the appropriate program for the particular child. It is not unreasonable to assume that the Legislature intended the expenditure of the public moneys to be left in the control of public officers.

There is no conflict between that reading and the department's regulations. The latter provide a vehicle for obtaining a resolution by public officers of placement disputes pending evaluation. Under 603 Code Mass. Regs. § 327.3 (1978), governing placement pending evaluation, "[a] child who, at the time of referral for evaluation, was not in an educational program approved by the school committee, shall be placed in an appropriate program as determined by agreement between the school committee and the child's parents. When such agreement cannot be reached, the Regional Branch Office of the Division (or upon referral by the Regional Branch Office, the Bureau of Special Education Appeals) shall, within thirty days of notice, select an appropriate program for the child to be provided by the school committee . . . ." Resort to that regulation should enable parents to obtain an early determination by the department of an appropriate, publicly-funded, interim placement until the § 3 evaluation process and review thereof are completed. Parents who undertake a private placement unilaterally "assume[ ] a financial risk that the [department will] recommend a different placement." *Amherst-Pelham*, 376 Mass. at 493.[9]

---

[9] *Doe* v. *Brookline Sch. Comm.*, 722 F.2d 910, 917-919 (1st Cir. 1983), suggested securing a governmental decision regarding interim placement

The Federal and State acts both dictate the mainstreaming policy: their common objective is the provision of needed services promptly to learning-handicapped children through the free, local public school system except where the resources of those schools cannot appropriately meet the children's needs. *Doe* v. *Anrig,* 692 F.2d at 808. *Isgur* v. *School Comm. of Newton,* 9 Mass. App. Ct. 290, 298-300 (1980). That policy required a Franklin public school program for Kevin if one could be developed which would meet his special needs. From the outset Kevin's parents took the position that he would be better served by a private school education, and their own written statements make it clear that they were not prepared to accept any public school program that the Franklin school system might offer. Such was, of course, their right; but, subject to limited exceptions, no public obligation to pay for private education arises except where the local administrator of special education, the department, or the court makes a determination that the resources of the public school system cannot meet the child's special needs and that the private school program is the least restrictive program for meeting those needs. General Laws c. 71B, § 3, contemplates a speedy determination of that question at the local and the departmental level, with provision in the regulations for a departmental selection of interim placement where necessary. We find nothing in the statute, the regulations, or the decided cases, which contemplates public assumption of past private tuition bills merely because the department has recommended an adjustment, perhaps minor, in the public educational plan originally put forward by the local core evaluation team. Compare *Isgur* v. *School Comm. of Newton,* 9 Mass. App. Ct. at 293-294, 299.

For these reasons and those given by the judge, it follows (1) that the departmental decisions of December 4, 1978, and July 12, 1979, were properly overturned insofar as they ordered reimbursement to the parents for the 1974-75 and 1975-76 school

through the vehicle of a preliminary injunction. The decision does not mention the departmental regulations governing interim placement (603 Code Mass. Regs. §§ 327.1-327.3 [1981]) or whether parents must exhaust available administrative remedies. Clearly the department should avoid delay in acting on interim placement questions.

years, and (2) that the parents' separate action for reimbursement was correctly dismissed because facts were not shown that bring the case within the provisions of the regulations which could entitle them to reimbursement.[10]

*Judgments affirmed.*

[10] We read the *Amherst-Pelham* case (376 Mass. at 491-496) to have held that the department's rule making authority extends to establishing the principles governing any parental right to reimbursement, within guidelines implicit in the enabling act itself or other applicable provisions of law (compare *Abrahamson* v. *Hershman*, 701 F.2d 223, 229 [1st Cir. 1983]; *Doe* v. *Brookline Sch. Comm.*, 722 F.2d at 915), and thus we consider the parents' separate action not to raise any issue not disposed of in the action for judicial review. We also read the *Amherst-Pelham* case (at 482-483, 485, 492) to have held that the parents' claim for payment of retroactive benefits may be pressed through the administrative hearing route, with any order by the department being subject to judicial review. It may be that the *Amherst-Pelham* case is subject to a narrower reading in this respect, authorizing the department, when it makes a prospective recommendation of private placement, to determine as well the date, retrospective or prospective, when the responsibility should begin, without necessarily authorizing the department to adjudicate parental claims for reimbursement dissociated from current placement determinations. The latter could be regarded as ordinary claims in the nature of contract against cities or towns, presumptively subject to judicial determination absent statutory direction to the contrary. Chapter 766 is silent on the point (as it is on the subject of retroactive reimbursement generally, *Amherst-Pelham*, 376 Mass. at 491); and the statutory description of the hearing officer's role (according to G. L. c. 71B, § 3, he "may recommend alternative educational placements to the parents") seems to contemplate a prospective placement decision rather than a direct adjudication of contractual claims based on allegations of past failures in complying with statutory responsibilities. Thus, we have some question whether the remand decisions and the second order of remand were appropriate, given that there was no question of current placement then at issue.