SCHOOL COMMITTEE OF FRANKLIN vs. COMMISSIONER OF
EDUCATION & others[1]
(and a companion case[2]).

Norfolk. Suffolk.  December 6, 1984. — September 5, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Education,* Special educational needs. *School and School Committee,*
Reimbursement for special educational needs. *Administrative Law,* Ju-
dicial review, Time of decision. *Practice, Civil,* Special education
appeal. *Declaratory Relief.*

In the absence of special circumstances justifying departure from the appeal
procedure provided by G. L. c. 30A, § 14, a school committee seeking
to set aside a decision of the Department of Education was not entitled
to circumvent the normal course of judicial review of the department's
decision by bringing an action for declaratory relief under G. L. c. 231A
after the thirty-day limitation period for appeal under G. L. c. 30A,
§ 14, had expired. [807-808]
Where a school committee failed to seek judicial review of a decision by the
Department of Education within the thirty-day period provided by G. L.
c. 30A, § 14, the decision was enforceable without substantive judicial
review and, consequently, subsequent proceedings in an action for de-
claratory relief seeking review of the decision, during which the depart-
ment by leave of court withdrew its decision and replaced it with a
substantively different one, were a nullity and the action could not be
maintained as a timely appeal from the substituted decision. [808-809]
Although, in an action by a school committee commenced some eight months
after a decision by the Department of Education requiring the school
committee to reimburse the parents of a child with special educational
needs for private school expenses for the 1974-1975 academic year, the
committee was not entitled to review of that decision, this court, in the
circumstances, treated the case as a timely complaint seeking judicial
review under G. L. c. 30A, § 14, of a decision respecting the 1975-1976
school year, a period which came in issue in this action as a result of

---

[1] A hearing officer of the Bureau of Special Education Appeals; Dorothy
and Arthur B., parents of Kevin B., a special needs child.

[2] Arthur B. & another *vs.* School Committee of Franklin.

motions to remand to the department filed by the department and the child's parents. [808-809]

In an action by a school committee seeking judicial review of a decision by the Department of Education requiring the school committee to reimburse the parents of a child with special educational needs for private school expenses for the 1975-1976 school year, the judge erred in applying the standards for review prescribed by 20 U.S.C. § 1415 (e) (2), which were established by § 615 (e) (2) of the Education for All Handicapped Children Act of 1975, as appearing in § 5 (a), Part B of Pub. L. No. 94-142, 89 Stat. 789, rather than reviewing the administrative record under G. L. c. 30A, § 14, where the Federal procedural standards were applicable to State and local educational agencies receiving Federal funds under the provisions of § 5 (a), Part B of Pub. L. No. 94-142, and at the time in question the school committee was not receiving funds under those provisions. [809-813]

CIVIL ACTIONS commenced in the Superior Court Department on December 6, 1976, and January 11, 1980, respectively.

The cases were heard by *Hiller B. Zobel, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Judith S. Yogman,* Assistant Attorney General (*Charles E. Walker, Jr.,* Assistant Attorney General, with her) for the Commissioner of Education.

*C. Peter R. Gossels* for the School Committee of Franklin.

*Paul G. Murphy,* for the parents, submitted a brief.

LIACOS, J. These consolidated cases raise the recurring question of responsibility for the payment of the cost of educating in a private school a child with "special needs" as defined in "Chapter 766." See G. L. c. 71B, § 1, as amended by St. 1978, c. 552, § 18, inserted by St. 1972, c. 766, § 11 (effective September 1, 1974). In the first action, the School Committee of Franklin (school committee) challenges a decision in which the Department of Education (department) determined that the school committee has financial responsibility for the education of Kevin B. at a private school, Leland Hall, during the 1974-1975 and 1975-1976 school years. In the second action, Kevin's parents (parents) seek reimbursement from the school committee of tuition paid by them to Leland Hall and for related

transportation costs for those two academic years. A judge in the Superior Court ordered dismissal of the latter complaint and the entry of judgment in the action brought by the school committee, declaring that the school committee was not liable to pay any person or agency for the child's cost of education from 1974 to the date of the judgment. On August 17, 1981, judgments entered, and, on appeal, the Appeals Court affirmed. *School Comm. of Franklin* v. *Commissioner of Educ.,* 17 Mass. App. Ct. 683 (1984). We granted the department's request for further appellate review, and we now reverse.

This case has a tortuous and complicated procedural history, reflecting perhaps the novelty of Chapter 766 when the initial decisions were made by the parties. The facts and procedural history of the case have been set forth in great detail by the Appeals Court in *School Comm. of Franklin, supra* at 684-688, 693, and need not be repeated fully here. We state only those facts essential to our decision.

It is undisputed that the child was a special needs child, within the meaning of Chapter 766, who was enrolled in a remedial program at Leland Hall in the summer of 1974 at the suggestion of a learning disabilities specialist employed by the school committee. Kevin continued at Leland Hall for the school years 1974-1975, 1975-1976, and 1976-1977. In 1977-1978, the parents transferred Kevin to another private school.

The evaluation prepared for Kevin by the Franklin school staff (without the participation of the parents) was submitted to the parents in August, 1974. It was unsatisfactory. Further evaluations ensued, and another plan was sent to the parents in March, 1975. The parents rejected this plan. A hearing was held before a hearing officer of the department on November 20, 1975, the 1974-1975 school year having been concluded. Notice of the hearing officer's decision was not received until April, 1976, near the end of the 1975-1976 school year. The school committee took no action to seek judicial review until December 6, 1976. Thus, the 1974-1975 school year was completed, and the 1975-1976 school year was almost half completed, with Kevin still attending Leland Hall, prior to the filing of the school committee's complaint. The hearing officer

had found that neither Leland Hall's total residential setting nor the school committee's plan was appropriate for Kevin's educational needs, and he ordered the school committee to devise a new plan. He concluded that "until Franklin designs an appropriate plan for Kevin . . . he may remain at Leland Hall at Franklin's expense."[3]

The school committee's initial complaint, filed in December, 1976, sought review under G. L. c. 30A, § 14. Although the complaint requested "declaratory judgment," the school committee sought review on the record of the agency proceedings and recited the grounds for judicial review contained in G. L. c. 30A, § 14 (7). In its request for relief, the school committee sought an order that the hearing officer's decision be set aside and that Kevin be placed in the Franklin public schools. The department successfully moved to dismiss the complaint on the ground that the proceeding before the department was adjudicatory and that, under G. L. c. 30A, § 14, a complaint seeking judicial review had to be filed within thirty days of the agency decision. In allowing this motion, the judge gave the school committee leave to file an amended complaint. The amended complaint filed was more particularized in its requests for declaratory relief, but was not different in substance from the original complaint. Both the department and the parents moved for dismissal. Another judge denied these motions, without stating reasons, on March 31, 1977.

In April, 1977, the department moved that the case be remanded so that a hearing officer could make more specific findings. The case was remanded in June, 1977, and a decision by a different hearing officer issued on December 4, 1978. In this first remand decision, the hearing officer found that the school committee had not proposed an adequate, appropriate educational plan for Kevin from September, 1974, through the

---

[3] We believe that the hearing officer ordered the school committee to reimburse the parents for Kevin's private school, both retrospectively and prospectively. Contra *School Comm. of Franklin* v. *Commissioner of Educ.*, *supra* at 687 ("The [initial] decision had arguably ordered the school committee to assume financial responsibility only prospectively from the date of decision").

end of the 1974-1975 school year. He found Leland Hall to be an adequate and appropriate placement for that time period, and ruled that the school committee had fiscal responsibility for Kevin's education for the same period. The hearing officer stated that there was insufficient evidence on the record to decide whether the school committee's liability should continue beyond the end of the 1974-1975 school year.

Thereafter, the parents moved that the case be remanded a second time to determine whether the liability of the school committee established under the first remand decision would continue through the 1978 school year. The motion was granted in April, 1979. In May, 1979, the hearing officer who considered the matter on the first remand took evidence. In July, 1979, a second remand decision issued in which an assessment was made of the school committee's responsibility for the costs of Kevin's education from the 1975-1976 school year through the 1977-1978 school year.

The second remand decision left the first remand decision undisturbed: The school committee was responsible for Kevin's education for the 1974-1975 school year. After taking new evidence, the hearing officer found that until May 20, 1976, the parents had cooperated with the school committee, and that after that date they no longer cooperated. He decided that, even if the parents had cooperated after May 20, 1976, it was unlikely that the school committee could have developed a new educational plan by the end of the 1975-1976 school year. The hearing officer also found that Leland Hall was an adequate and appropriate placement for Kevin through the end of the 1975-1976 school year, and he concluded that the school committee was responsible for the costs of Kevin's tuition at Leland Hall and for his transportation costs for the 1975-1976 school year. He concluded, however, that the school committee was not responsible for the costs of Kevin's education for the school years 1976-1977 and 1977-1978.[4]

---

[4] The hearing officer's decision regarding the 1976-1977 and 1977-1978 school years has not been appealed by any party.

When the cases came before the Superior Court judge for a consolidated hearing on the merits, the issue then was the liability of the school committee to reimburse the parents for the costs of Kevin's education at Leland Hall for the 1974-1975 and 1975-1976 school years. Two weeks before the hearing in the Superior Court, the school committee filed a motion to present additional evidence, citing G. L. c. 30A, § 14 (6), G. L. c. 71B, § 3, and 20 U.S.C. § 1415(e)(2). The trial judge allowed the motion over the opposition of the department.

The judge determined that the Federal standards and procedures of 20 U.S.C. § 1415(e)(2) preempt State law standards and procedures. He further ruled that "[s]ilent though [20 U.S.C. § 1415(e)(2)] and its legislative history may be on the question of retroactivity, . . . the statute governs judicial review of . . . [the first remand decision] that Leland Hall was a suitable alternative private placement." Thus, the trial judge applied the "preponderance of the evidence" test of 20 U.S.C. § 1415(e)(2) rather than the "substantial evidence" test of G. L. c. 30A, § 14. Basing his decision largely on the new evidence received, the trial judge found that Leland Hall was at no time an appropriate placement for Kevin and that the school committee need not reimburse the parents for the costs of sending Kevin to Leland Hall from 1974 on.

We hold that the school committee's complaint, filed in December, 1976, was untimely. Thus, the hearing officer's initial determination of the school committee's liability for the school year 1974-1975 is final. Accordingly, it was error to dismiss the complaint of the parents, to the extent that it sought reimbursement for the 1974-1975 school year. We order entry of judgment on the parents' complaint as to the school year 1974-1975.

We consider the disposition of the appeal which relates to the 1975-1976 school year. As we have stated, the second remand order issued in the context of Superior Court proceedings which should have been dismissed as untimely. However, a challenge to the decision regarding the 1975-1976 school year could have been the basis for a new action. Since this school year came in issue in these proceedings largely because

of the motions to remand filed by the department and the parents, it would be unjust to foreclose judicial review to the school committee in this regard. Thus, we will treat the case as if a new, timely complaint had been filed under G. L. c. 30A, § 14, calling the administrative finding of liability into question for the 1975-1976 school year.[5]

We hold, as to the 1975-1976 school year, that the matter was properly before the court, but that the judge erred in applying the Federal standard of judicial review instead of the standard provided by State law. Accordingly, we reverse the judgment for the school committee in its case, as well as the order of dismissal of the parents' complaint seeking reimbursement for the 1975-1976 school year. As to that year, we remand for further proceedings.

---

[5] We assume for the purpose of this appeal that the school committee, as an aggrieved party, could appeal a departmental decision to the Superior Court under G. L. c. 30A, § 14. Although some doubt has been expressed concerning the right of school committees to appeal pursuant to G. L. c. 30A (1984 ed.) and G. L. c. 71B, § 3, see *School Comm. of Franklin* v. *Commissioner of Educ.*, 17 Mass. App. Ct. 683, 689-690 & n.6 (1984), our practice has been to assume that c. 30A, § 14, applies. See *School Comm. of Brookline* v. *Bureau of Special Educ. Appeals,* 389 Mass. 705, 714-716 (1983); *Amherst-Pelham Regional School Comm.* v. *Department of Educ.,* 376 Mass. 480, 495, 498 (1978). See also *Isgur* v. *School Comm. of Newton,* 9 Mass. App. Ct. 290, 294 n.13 (1980); *Burlington* v. *Department of Educ.,* 655 F.2d 428, 430 (1st Cir. 1981) (*Burlington I*). As we explain, *infra,* whether c. 30A provides school committees with a right to appeal is of little present practical import, since 20 U.S.C. § 1415(e)(2) now permits any party aggrieved by the agency decision to bring an action in State or Federal court as to the school years for which the act is in effect. The school committee, in a supplementary brief filed with the court, argues now that the review it sought was not under G. L. c. 30A, in that the administrative proceedings in the department were not "adjudicatory." As Justice Armstrong in the Appeals Court stated, "In these appeals . . . all parties have assumed that the proceedings before the department were 'adjudicatory' within the meaning of G. L. c. 30A, § 1, and that the school committee, as an aggrieved party, could take an appeal from the departmental decision to the Superior Court under the provisions of G. L. c. 30A, § 14." *School Comm. of Franklin* v. *Commissioner of Educ., supra* at 688-689. The school committee cannot seek to shift ground as to the basis of judicial review. In any event, judicial review under G. L. c. 30A, § 14, is all that the school committee is entitled to receive with regard to the school year 1975-1976.

1. *Appropriateness of declaratory relief.* The school committee argues that it is entitled to declaratory relief under G. L. c. 231A. Thus, it would seek to avoid the thirty-day limitation for an appeal specified in G. L. c. 30A, § 14 (1). The school committee's initial complaint, filed in December, 1976, sought review under G. L. c. 30A, § 14. Although the complaint also requested "declaratory judgment," the school committee sought review on the record of the agency proceedings and recited the grounds for judicial review contained in G. L. c. 30A, § 14 (7).[6] In its request for relief, the school committee sought an order that the hearing officer's decision be set aside and that Kevin be placed in the town's public schools. Such an action is not a de novo proceeding, as is usually considered appropriate for a declaratory judgment. See *Mayo* v. *Boston Rent Control Adm'r,* 365 Mass. 575, 576 (1974).

In *Meenes* v. *Goldberg,* 331 Mass. 688, 691 (1954), a case involving the validity of a tax lien, we stated that declaratory relief "should not be denied because of the possibility of some other form of remedy, if the case presented comes within the general scope of [declaratory relief] and no special reasons exist against the use of the declaratory process." We noted, however, in *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444, 449-451 (1973), that we generally have not extended the rule in *Meenes* to reach cases involving different administrative agencies and procedures than those involved in *Meenes.* We further noted that, even within the context of tax cases, parties were permitted to circumvent the normal course of administrative review by bringing declaratory judgment actions only where the facts of a particular case raised "important public questions whose resolution concern[ed] or . . . affect[ed] more persons than the parties to the case." *East Chop Tennis Club, supra* at 450. The normal course of administrative review requires a timely appeal to the Superior Court under G. L. c. 30A, § 14. Absent

---

[6] The school committee's reference in its amended complaints to G. L. c. 249, § 4 (certiorari), does not detract from our conclusion. Resort to certiorari may not be had if another adequate remedy is available. *MacDonald* v. *Board of Health of Braintree,* 347 Mass. 76, 77 (1964).

special circumstances, an action for a declaratory judgment cannot be used as a substitute for timely appeal under G. L. c. 30A, § 14. See *Goldman* v. *Planning Bd. of Burlington,* 347 Mass. 320, 326 (1964); *Second Church in Dorchester* v. *Boston,* 343 Mass. 477, 479 (1962). No special circumstances are shown here. The entire thrust of the complaint was aimed at setting aside a single adjudicatory decision of the department; we consider the action to have been brought pursuant to G. L. c. 30A, § 14.

2. *Motion to dismiss.* The department and the parents first argue that the motion judge erred in denying their motions to dismiss the town's first amended complaint as untimely filed. General Laws c. 30A, § 14 (1) (1984 ed.), establishes a thirty-day appeal period for judicial review of a final agency decision.[7] The department's initial decision issued on April 9, 1976, and the town filed the instant complaint in the Superior Court on December 6, 1976. The Appeals Court noted that (1) the April 9, 1976, decision was withdrawn and replaced by the first remand decision of December 4, 1978, and (2) the first remand decision was substantively different from the initial April 9, 1976, decision. *School Comm. of Franklin, supra* at 693. The court reasoned that the first remand decision could have been the subject of a new action but that such was not necessary, and concluded that therefore there was no delay in seeking judicial review because judicial proceedings were ongoing. We disagree. The hearing officer found in the initial April 9, 1976, decision that the school committee's plan and Leland Hall were each too restrictive a placement for Kevin. See G. L. c. 71B, § 2 (1984 ed.). He ordered the school committee to devise a new plan but permitted Kevin to remain at Leland Hall at the school committee's expense until a new plan was developed. Even though, in the first remand decision of December, 1978, a second hearing officer decided that Leland Hall was an appropriate placement for Kevin, the initial April, 1976, decision was certainly a "final decision of [an] agency in

---

[7] We note that some courts have applied the statute of limitations established by a State administrative procedure act to actions brought pursuant to 20 U.S.C. § 1415(e)(2). See, e.g., *Department of Educ.* v. *Carl D.,* 695 F.2d 1154, 1155 (9th Cir. 1983).

an adjudicatory proceeding" from which the school committee should have sought timely review. G. L. c. 30A, § 14. Cf. *East Longmeadow* v. *State Advisory Comm'n,* 17 Mass. App. Ct. 939, 940 (1983) (an administrative order requiring a subordinate administrative body to reconsider its order is not a final order). Thus, all subsequent judicial decisions concerning the 1974-1975 school year were improperly rendered. The hearing officer's initial determination of the school committee's liability for the 1974-1975 school year is final and enforceable in a court of law without substantive judicial review.[8] We consider, however, the school committee's appeal from the 1975-1976 school year decision, in the interests of fairness, for the reasons stated previously at 805-806, *supra.*

3. *Applicability of Federal law.* The second remand decision, issued in July, 1979, addressed, inter alia, the question of responsibility for the costs of Kevin's education for the 1975-1976 school year. As is discussed in *School Comm. of Franklin* v. *Commissioner of Educ.,* 17 Mass. App. Ct. 683, 688 (1984), following this second remand decision, the trial judge took additional evidence and applied to the evidence the standard prescribed by 20 U.S.C. § 1415(e)(2) (1976).[9] These

[8] The school committee correctly points out that the department never moved to dismiss the school committee's second amended complaint, which was filed after the department's second motion to dismiss was denied. We do not view such inaction as a waiver of the department's timeliness argument. The school committee's failure to institute the action within the thirty-day limitation period contained in G. L. c. 30A, § 14 (1), deprived the court of jurisdiction under that chapter. *Westland Hous. Corp.* v. *Commissioner of Ins.,* 346 Mass. 556, 558 (1963). See also *Schulte* v. *Director of the Div. of Employment Sec.,* 369 Mass. 74, 79-80 (1975); *Flynn* v. *Contributory Retirement Appeal Bd.,* 17 Mass. App. Ct. 668, 669-670 (1984).

[9] Section 1415 of 20 U.S.C. establishes procedural safeguards for handicapped children and their parents or guardians, with respect to the provision of free appropriate public education by State and local educational agencies receiving funding under § 5(a), Part B of Pub. L. No. 94-142, 89 Stat. 793 (20 U.S.C. §§ 1419, 1420 [1982]). It states, in part, that the State must provide parents an opportunity to present complaints and an opportunity for "an impartial due process hearing" by the State or local educational agency. 20 U.S.C. §§ 1415(b)(2), 1415(b)(1)(E). After such hearing, the aggrieved party may then obtain an impartial review of the local agency's

standards were established by § 615(e)(2) of the Education for All Handicapped Children Act of 1975 (EAHCA), as appearing in § 5(a), Part B of Pub. L. No. 94-142, 89 Stat. 789. For convenience, we shall refer to the sections of the Act as numbered in the corresponding sections of the United States Code. The department contends that the trial judge erred in applying the standard for judicial review contained in § 1415(e)(2). We agree. Section 1415(e)(2) is inapplicable to State agency determinations for those school years which do not come within the terms of the act.

Section 1415 of EAHCA (§ 5[a], Part B of Pub. L. No. 94-142, 89 Stat. 788) took effect in October, 1977. Prior to the enactment of EAHCA, Massachusetts, unlike some other States, had a highly developed special education law which was a model for other State statutes. *Burlington* v. *Department of Educ.*, 736 F.2d 773, 789 n.17 (1st Cir. 1984) (*Burlington II*), aff'd, 471 U.S. 359 (1985). The purpose of the Federal law was, in large measure, to provide assistance to the various States to ensure "a free appropriate public education which emphasizes special education and related services designed to meet [the] unique needs . . . of handicapped children." 20 U.S.C. § 1400(c) (1982). The Congress found that many handicapped children were not receiving adequate public educational support. 20 U.S.C. § 1400(b). The history of the act is traced in *Board of Educ. of the Hendrick Hudson Cent. School Dist.* v. *Rowley,* 458 U.S. 176 (1982). In *Rowley,* the court stated at 179: "The Education of the Handicapped Act (Act), 84 Stat. 175, as amended, 20 U.S.C. § 1401 et seq. (1976 ed. and Supp. IV), provides federal money to assist state and local agencies in educating handicapped

decision at the State level. 20 U.S.C. § 1415(c). Finally, judicial review is guaranteed to any party aggrieved by the final decision of the State educational agency. The court "shall hear additional evidence at the request of a party, and [base] its decision on the preponderance of the evidence." 20 U.S.C. § 1415(e)(2).

In contrast, the State Administrative Procedure Act provides that judicial review of an agency proceeding be confined to the record, and sets a "substantial evidence" standard of review. G. L. c. 30A, § 14 (5) and (7) (1984 ed.).

children, *and conditions such funding upon a State's compliance with extensive goals and procedures.* The Act represents an ambitious federal effort to promote the education of handicapped children, and was passed in response to Congress' perception that a majority of handicapped children in the United States 'were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to "drop out."' H.R. Rep. No. 94-332, p. 2 (1975) (H.R. Rep.)." (Emphasis supplied.)

The court further stated, at 180-181: "In order to qualify for federal financial assistance under the Act, a State must demonstrate that it 'has in effect a policy that assures all handicapped children the right to a free appropriate public education.' 20 U.S.C. § 1412(1). That policy must be reflected in a state plan submitted to and approved by the Secretary of Education, § 1413, which describes in detail the goals, programs, and timetables under which the State intends to educate handicapped children within its borders. §§ 1412, 1413. States receiving money under the Act must provide education to the handicapped by priority, first 'to handicapped children who are not receiving an education' and second 'to handicapped children . . . with the most severe handicaps who are receiving an inadequate education,' § 1412(3), and 'to the maximum extent appropriate' must educate handicapped children 'with children who are not handicapped.' § 1412(5)." (Footnotes omitted.) Additionally, when a State receives Federal moneys under EAHCA, § 1415 of the Act "imposes extensive procedural requirements upon States *receiving federal funds under its provisions*" (emphasis supplied). *Id.* at 182. The EAHCA leaves, however, the primary responsibility for developing and executing educational programs for handicapped children with the States. *Id.* at 183.[10]

---

[10] Even where EAHCA applies, "Congress has assigned to the states in effectuating a 'free appropriate public education' for all disabled children, . . . the right to enforce their own laws and regulations at the due process hearings authorized by § 1415, and not merely those skeletal federal provisions designed as minimum standards. Any other construction would render the states powerless to effectuate the federal Act fully or to provide greater

The key question here is whether § 1415, on which the trial judge relied, applies to agency decisions as to school years prior to the receipt by a State of Federal funds under § 5(a), Part B of Pub. L. No. 94-142, 89 Stat. 793. We hold that it does not. Section 1415(a) states:

"Any State educational agency, any local educational agency, and any intermediate educational unit which receives assistance under this subchapter shall establish and maintain procedures in accordance with subsection (b) through subsection (e) of this section to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies and units."

We agree with the court in *Scokin* v. *Texas,* 723 F.2d 432, 440 (5th Cir. 1984), which stated:

"The requirements set forth in the EAHCA are tied directly to the receipt of federal funds. . . .

". . . .

"Although § 1412 allowed school districts until September 1, 1978 to provide a free appropriate education to handicapped children, the language of the Act indicates that its procedural requirements, set out in § 1415, were to be enforced during any fiscal year that the state received funds under the Act. . . .

". . . .

"Because the defendants in this case were not receiving EAHCA funding . . . , they were not subject to either the

protection and services for disabled children than the Act requires. We find no support in the legislative history of a congressional intention to supplant the states' historic direction of education within their boundaries." (Footnotes omitted.) *Burlington II, supra* at 785.

procedural or substantive requirements of the Act during the 1977-78 school year."[11]

The judge in this case undertook no review of the agency decision pursuant to G. L. c. 30A, § 14. His decision to take additional evidence was not in accord with the nature of judicial review provided by § 14. See *Fanion* v. *Director of the Div. of Employment Sec.*, 391 Mass. 848 (1984); *Marmer* v. *Board of Registration of Chiropractors*, 2 Mass. App. Ct. 162, 164-168 (1974). Additionally, by applying the Federal standard of "fair preponderence" under § 1415, rather than a review on the administrative record to determine whether the agency decision was supported by "substantial evidence," the judge committed error. Accordingly, his decision cannot stand, and the matter must be remanded for further proceedings.

On remand, the court is to apply the substantial evidence standard to its review of the administrative record to determine whether the decision of the agency as to the 1975-1976 school

---

[11] Accord *Eberle* v. *Board of Pub. Educ. of the School Dist. of Pittsburgh,* 444 F. Supp. 41 (D. Pa. 1977). In *Eberle* an agency hearing, agency decision, and affirmation of the agency decision by the State Secretary of Education all occurred prior to the effective date of § 1415. After § 1415 became effective, a complaint was filed in Federal court challenging the agency proceedings. The judge ruled that "[t]he safeguards [of § 1415] are not intended as independent of funding, but are imposed as a condition of funding. As a result, these conditions cannot be imposed prior to funding made conditional upon them. They should not be retrospectively applied." *Id.* at 44. See contra *Frankel* v. *Commissioner of Educ.,* 480 F. Supp. 1156, 1158-1160 (S.D.N.Y. 1979), which determined that § 1415 was retroactive where the agency proceedings still were pending when § 1415 became effective in October, 1977; *Vogel* v. *School Bd. of Montrose R-14 School Dist.,* 491 F. Supp. 989, 991, 994 n.4 (W.D. Mo. 1980) (same). Cf. *In re Due Process Hearing of Bailey* v. *Unified School Dist. No. 345,* 233 Kan. 714, 720-723 (1983) (while parties seemed aware of the provisions of 20 U.S.C. § 1415[e][2], review was conducted under State law standard). The immediate predecessor to § 1415 of EAHCA, Pub. L. No. 93-380, 88 Stat. 579, 582, enacted in 1974, required that handicapped students and their parents receive an opportunity for an impartial due process hearing. The 1974 statute did not contain a jurisdictional grant or a standard of review. Notwithstanding the fact that the Commonwealth may have received funds under the 1974 statute, the greater and more specific procedural requirements of § 1415 must be tied to funding authorized by § 5(a), Part B of Pub. L. No. 94-142, 89 Stat. 793.

year is warranted. Assuming that the judge concluded that the agency decision is warranted by substantial evidence, then, reimbursement may be ordered paid to the parents for that school year in accordance with the criteria set forth by this court in *Amherst-Pelham Regional School Comm.* v. *Department of Educ.*, 376 Mass. 480, 498 (1978). See *Commonwealth* v. *School Comm. of Springfield*, 382 Mass. 665, 677 (1981). 603 Code Mass. Regs. 28.00, § 504.5(f) (1981). Judgment is to be entered for the parents on their complaint, without further hearing, except as to the amount due for the reimbursement of their costs for Kevin's education for the 1974-1975 school year.

*So ordered.*