475 S.E.2d 55

F. Jane HUSTEAD, Guardian Ad Litem on Behalf of the Minor Children, To–Wit: Brett M. ADKINS, Daniel E. Adkins, Jacob R. Adkins, Joshua D. Adkins, Kenneth Odell Adkins, Michael T. Arnett, Emily R. Arthur, Marshall B. Arthur, Jamie D. Banks, Timothy Billups, Daniel B. Blevins, Jr., Matthew A. Blevins, Adam C. Booth, Joshua L. Booth, Ryan T. Booth, Roxanne M. Burdette, Jennifer Byard, Miranda Byard, Ashley Caldwell, Crystal Caldwell, Monica Clark, William C. Duty, Barbara Earls, Frances M. Elliott, Michael S. Ferguson, Richelle L. Ferguson, Felecia Frasher, Kayla Frasher, Timothy Frasher, Brady Gilkerson, Jamie Gilkerson, Michael Gilkerson, Shawn Gilkerson, Angela Hall, Bobby Alan Hall, Jason Hall, Pamela Holley, John C. Howerton, Jr., Amber Johnson, Courtney Johnson, Mathina Kinstler, Andrew Ryan Leist, Jonathan D. Lester, Jonathan R. Little, Kris Ray Maynard, Barbara Ann Mills, Marisa D. Milum, Piper Cody Moore, Sid R. Mosser, II, Jerry D. Napier, Melissa L. Napier, Ashlea Perry, Nichole Perry, Jessica Pinnick, Justin A. Prince, Angela Pulley, Carol Pulley, Jamie Michelle Pulley, Robert Pulley, Kristen Ramey, James E. Ray, Jr., Amanda Romans, Elizabeth Russell, Keisha Ryle, Belvey Joe Shepherd, Jr., Brett E. Shepherd, Brittany Shepherd, Glenda Shepherd, Brian K. Short, Rebecca Sue Smith, Christopher Thacker, Carl E. Ward, Carla Ward, Elden Paul White, III, Jeffrey White, Brittney Zenos, Kemon Zenos, And Greta Fay Ball, Charles Ray Ball, Jr., Chadwick Brent Bellomy, Lola Michelle Bowens, Allen Breedlove, Susan Breedlove, James Bryant, Jr., Kayla Burton, Thaddeus Marshall Caldwell, Ashley Nicole Collins, Mary E. Collins, Sammy Cooper, Jr., Linda Sue Copley, Lucy Copley, Dustin E. Duvall, Alicia Bowman Ellis, Stephanie Michelle Ellis, Harry Endicott, Selena Endicott, Marisa Sue Evans, Sarah Frances Hamm, Angela Marie Hundley, Maldie May Hundley, Samuel Herbert Hundley, Virgie Leona Hundley, Little Ruth Elizabeth Lemaster, Derek Ray Meddings, Shai Anna Music, Robert Pelfrey, Jr., Christie M. Prince, Donald Ray Pritchard, II, Isaac V. Ramsey, Jr., Delbert James Ray, Junnie Allen Scarberry, Kayla Short, Brittany Michelle Sowards, Tommy Joe Thacker, Charles D. Wilson, And Adam Endicott, Amandia Evans and Danielle Schafer, Infants, Plaintiffs Below, Appellants,

v.

ASHLAND OIL, INC., Defendant Below, Appellee.

No. 23169.

Supreme Court of Appeals of West Virginia.

Submitted April 24, 1996.

Decided June 17, 1996.

F. Jane Hustead, Huntington, for Appellants.

Marc E. Williams, Robert L. Massie, Lisa A. Green, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for Appellee.

WORKMAN, Justice:

This case is before the Court upon the appeal of F. Jane Hustead, the guardian ad litem of 118 infant Plaintiffs in the Ashland Oil, Inc. (sometimes referred to as "Ash-

land") suit,[1] from the May 11, 1995, final order of the Circuit Court of Cabell County dismissing with prejudice of a declaratory judgment action. The Appellant argues that the circuit court erred: 1) in holding that the waivers of the infants' future right to a jury trial and the right to sue for punitive damages in any future unaccrued cause of action against the Appellee for emissions associated with the operation of the refinery were legally valid and that the legal guardians had the right to enter into such waivers on behalf of their infant child(ren), as said ruling was in contravention of this state's public policy; and, 2) in accepting the Appellee's argument that the court must consider the validity of the waivers in the context that they were signed and consented to by adults. The Appellant also posits a question regarding the scope of a guardian ad litem's duties when representing a minor child in a civil action. Based on our review of the record, the parties' arguments and all other matters submitted before the Court, we find that the Appellant, having failed to appeal the final judgment of the circuit court, has launched a collateral attack on a final judgment in a civil action through the institution of a declaratory judgment action. We conclude that such a collateral attack is prohibited and, therefore, we affirm the lower court's decision upholding the settlement.[2]

## I.

This appeal arises from allegations that the Appellee's plant in Catlettsburg, Kentucky, violated air pollution regulations in 1989 with the alleged emissions of toxins which purportedly drifted in the air and injured residents of Wayne County, West Virginia. Numerous lawsuits were instituted against the Appellee involving approximately 2200 plaintiffs. During the course of the litigation, approximately 700 plaintiffs accepted a settlement and the rest were dismissed either involuntarily or voluntarily.

The basic terms of the settlement provided for the creation and implementation of a program of diagnostic and treatment services on the plaintiffs' behalf. The children's legal guardians were given the option of receiving a medical cost reimbursement over the next ten years that allowed the minor children to be reimbursed for certain medical expenses up to a preset figure per year, or alternatively, the minor children over the age of eight had the option of receiving the cash equivalent of the medical plan for the purpose of purchasing their own medical reimbursement coverage. If the legal guardian chose to provide this coverage for the child, then said money would be invested in an interest bearing trust account for the child until the child attained the age of eighteen.

As part of said settlement, the legal guardians for the minor children were required to sign a document entitled "Release and Covenant Not to Sue" and a separate "Arbitration Agreement" that waived certain future legal rights of the minor children. The pertinent provisions provided:

VII. FUTURE CLAIMS: Claimant relinquishes his or her right to a trial by jury for any and all Claims that Claimant may acquire or could assert in the future against any of the Released Parties for any claims arising from emissions associated with the operation of the Refinery. However, Claimant reserves the right to initiate arbitration or a bench trial with respect to such future Claims....

. . . .

... Claimant specifically releases and covenants not to sue the Released Parties for any and all punitive damages....

. . . .

IX. SEVERABILITY: If a Court of competent jurisdiction should determine that any provision of this **Release and Covenant Not to Sue** is invalid or unen-

---

1. The minor children actually were a part of three separate actions: *Beatrice Adkins, et al. v. Ashland Oil, Inc.,* Civil Action No. 91–C–631 (Cir. Ct. Cabell County); *Gladys Arnoldt, et al. v. Ashland Oil, Inc.,* Civil Action No. 92–C–1633 (Cir. Ct. Cabell County); and, *Earl Bocook, et al. v. Ashland Oil, Inc.,* 819 F.Supp. 530 (S.D.W.Va. 1993).

2. Based on our decision in this matter, we do not reach the merits of the Appellant's appeal as those issues are not properly before us. Moreover, we find it unnecessary at this time to answer the Appellant's question regarding the duties of a guardian ad litem. ·

forceable, such determination shall not affect the validity or enforceability of the other provisions of this **Release and Covenant Not to Sue**, which provisions are severable.

Not only were the minor plaintiffs who ultimately entered into settlements with the Appellee represented by their legal guardians in the settlement negotiations, they were also represented by five separate law firms that included lawyers with nationwide reputations in toxic tort litigation. Further, once the guardian ad litem was appointed, she also engaged in settlement negotiations on the children's behalf prior to reaching a compromise on terms to which she originally objected. Finally, prior to the execution of the settlement documents, the minor children's legal guardians each reviewed the release, complete with the now disputed terms, and consulted with their personal lawyers, as well as the guardian ad litem, regarding the terms of the settlement and the release agreement. Subsequently, the legal guardians voluntarily executed the release of behalf of their minor children.[3]

Prior to the lower court's approval of the settlement, the guardian ad litem objected to the above-mentioned releases of future legal rights for the minor children indicating her belief that the releases were void as against public policy and, therefore, unenforceable. Specifically, the guardian ad litem stated that she was "unable to say that this settlement is unequivocally not in the best interests of the infant children. However, unfortunately, the Guardian *Ad Litem* is unable to recommend this settlement as being in the best interest of the infant children." After considering the guardian ad litem's objection, the court approved the settlements of these matters expressly finding that the settlements were in the best interest of the minors.

The Appellant did not appeal the settlement, based on her opinion that "only the waivers were deemed inappropriate and the severability clause provided for in the settlement assured Appellant and Appellee that a resolution of the issue of the legality of the waivers would not affect the remainder of the settlement itself." Consequently, two years after the settlements were announced in early 1993, and over ten months after the settlements were approved, the guardian ad litem filed two complaints for declaratory judgment against Ashland seeking to have the circuit court determine the legality of the terms of the settlement she disputed that the court already had approved on the minor children's behalf. By order entered May 11, 1995, the circuit court dismissed the Appellant's declaratory judgment action with prejudice, finding that

a justiciable controversy exists and h[olding] that the settlement terms were binding and enforceable on the minors because the settlement contract was knowingly and intelligently bargained for and agreed upon by all parties. The Court also held that the Legal Guardians of the minors, their parents, did have the right to agree to and waive their minor children's future rights to a jury trial and their right to make a claim for punitive damages and that the Legal Guardians did knowingly and intelligently waive such rights as set out in the settlement contract.

## II.

### WAIVER OF APPEAL

The crux of the instant appeal concerns our adherence to the finality of judgments entered by the circuit court and not appealed to this Court. Accordingly, we must address the consequence that the Appellant's failure to appeal the circuit court's final judgment has on her institution of a declaratory judgment action. The Appellant argues that she did not intend to appeal the circuit court's ruling that the settlement agreement is in the best interest of the infant children. Rather, the Appellant argues that declarato-

---

**3.** Depositions were taken of every legal guardian who participated in the settlement in order to ascertain whether the guardians understood the terms of the settlement; whether they had received proper consultation from their attorneys and the guardian ad litem; and, whether they believed the settlement was in the best interests of their minor child(ren). The depositions were submitted before the lower court to aid the court in its determination of whether the settlements were in the minor children's best interests.

ry judgment was the proper course since "she simply s[ought] a declaration of the validity of the waivers contained [within the settlement agreement]. . . ." In contrast, the Appellee maintains that the guardian ad litem waived her right to appeal the circuit court's ruling that the settlement agreement is in the best interest of the minor plaintiffs. The Appellee asserts that a declaratory judgment action can not be used as a substitute for a direct appeal. *See School Comm. v. Commissioner of Educ.*, 395 Mass. 800, 482 N.E.2d 796, 801 (1985). Thus, the Appellee argues that under West Virginia Code § 56–10–4 (Supp.1995),[4] once the circuit court approves the compromise, the terms of the agreement must be construed as between competent adults. If the approval of the settlement agreement had been appealed, and the contested terms declared unenforceable, the parties then could have evaluated whether to proceed with the case towards trial, negotiated other acceptable terms on these issues or considered some other compromise to be included in lieu of the contested terms.

West Virginia Code § 56–10–4 provides, in pertinent part, that when a circuit court is presented with a compromise of actions and suits on behalf of infants, "[t]he court or judge, upon approving and confirming such compromise, *shall enter judgment or decree accordingly. Such judgment or decree shall bind the respective parties thereto, including such infant . . ., with like force and effect, and shall be subject to review, modification or reversal to the same extent only, as if it were a consent judgment or decree, entered under similar circumstances, in a case in which all the parties were adults . . . ." Id.* (emphasis added). It is undeniable that when settlements are court-approved following the procedures established by the legislature in this statute, that the circuit court's entry of the judgment order is intended to be a final judgment in the action.

Consequently, when a party to a settlement objects to the terms of the settlement that ultimately is approved by the circuit court, that party's appropriate course of action is to seek review of the circuit court's action under the provisions of West Virginia Code § 58–5–4 (Supp.1995), which requires a timely appeal to this Court.[5] *See* W. Va. R. App. 3. Failure to appeal the circuit court's final court-approved settlement order to this Court necessarily results in "[a] final judgment on the merits of an action [and] precludes the parties or their privies from relitigating issues that were or could have been

---

**4.** West Virginia Code § 56–10–4 provides, in pertinent part:

In any action or suit wherein an infant . . . is a party, the court in which the same is pending, or the judge thereof in vacation, shall have the power to approve and confirm a compromise of the matters in controversy on behalf of such infant . . ., if such compromise shall be deemed to be to the best interest of the infant. . . . Such approval or confirmation shall never be granted except upon written application therefor by the guardian . . . of the infant . . ., setting forth under oath all the facts of the case and the reasons why such compromise is deemed to be for the best interest of the interest of the infant. . . . And the court or judge, before approving such compromise, shall, in order to determine whether to approve or disapprove the compromise, he[ar] the testimony of witnesses relating to the subject matter of the compromise and cause said testimony to be reduced to writing and filed with the papers in the case. The court or judge, upon approving and confirming such compromise, shall enter judgment or decree accordingly. Such judgment or decree shall bind the respective parties thereto, including such infant . . ., with like

force and effect, and shall be subject to review, modification or reversal to the same extent only, as if it were a consent judgment or decree, entered under similar circumstances, in a case in which all the parties were adults. . . . *Id.*

**5.** West Virginia Code § 58–5–4 provides:

No petition shall be presented for an appeal from, or writ of error or supersedeas to, any judgment, decree or order, whether the state be a party thereto or not, which shall have been rendered or made more than four months before such petition is filed with the clerk of the court where the judgment, decree or order being appealed was entered: Provided, That the judge of the circuit court may, prior to the expiration of such period of four months, by order entered of record extend and reextend such period for such additional period or periods, not to exceed a total extension of two months, for good cause shown, if the request for preparation of the transcript was made by the party seeking such appellate review within thirty days of the entry of such judgment, decree or order. *Id.*

raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981)(citing *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) and *Cromwell v. County of Sac*, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1876)). Further, "the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong. . . ." *Moitie*, 452 U.S. at 398, 101 S.Ct. at 2428 (citing *Angel v. Bullington*, 330 U.S. 183, 187, 67 S.Ct. 657, 659–60, 91 L.Ed. 832 (1947); *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Wilson's Executor v. Deen*, 121 U.S. 525, 534, 7 S.Ct. 1004, 1007, 30 L.Ed. 980 (1887)).

■ As the Virginia Supreme Court of Appeals stated in *Storm v. Nationwide Mutual Insurance Co.*, 199 Va. 130, 97 S.E.2d 759 (1957), res judicata is properly asserted where:

'A judgment on the merits, fairly rendered, by a court of competent jurisdiction, having cognizance both of the parties and the subject matter, however erroneous it may be, is conclusive on the parties and their privies until reversed or set aside in a direct proceeding for that purpose and is not amenable to collateral attack.'

*Id.* 97 S.E.2d at 761 (quoting 8 M.J., Former Adjudication, § 10 p. 581). " 'The indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of *res judicata* to avert.' " *Moitie*, 452 U.S. at 398–99, 101 S.Ct. at 2428 (quoting *Reed v. Allen*, 286 U.S. 191, 201, 52 S.Ct. 532, 534, 76 L.Ed. 1054 (1932)). Therefore, we hold that when a court approves a settlement by entry of a judgment order pursuant to the procedure set forth in West Virginia Code § 56–10–4, said judgment, left unappealed, becomes final and subject to the consequences of the doctrine of res judicata.

■ The Appellant admittedly chose not to file a direct appeal from the circuit court's final order. That decision resulted in the judgment becoming final and subject to the principles of res judicata. Thus, we must decide whether the Appellant can launch a collateral attack [6] on a final judgment in a civil action by bringing a declaratory judgment action after the doctrine of res judicata has attached.

■ West Virginia Rule of Civil Procedure 60(b) provides the only means for bringing a collateral attack on a final judgment in a civil action. That rule provides, in pertinent part:

*Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than eight months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

---

**6.** The Supreme Court of Oklahoma defined a "collateral attack" as "an attempt to avoid, defeat, evade, or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial." *Nilsen v. Ports of Call Oil Co.*, 711 P.2d 98, 101 n. 5 (Okla.1985) (citing *Woods Petroleum Corp. v. Sledge*, 632 P.2d 393, 396 (Okla.1981)).

W. Va. R. Civ. P. 60(b). Thus, one of the purposes of Rule 60(b) is to provide a mechanism for instituting a collateral attack on a final judgment in a civil action when certain enumerated extraordinary circumstances are present. When such extraordinary circumstances are absent, a collateral attack is an inappropriate means for attempting to defeat a final judgment in a civil action.

None of the parties in the instant case have asserted that any extraordinary circumstance exists that would fall within the confines of a Rule 60(b) motion. Consequently, the only logical explanation for the collateral attack on the judgment is that the Appellant is attempting to use the declaratory judgment action as a substitute for a direct appeal. Strategically, by bringing the declaratory judgment action rather than appealing the final judgment, the Appellant sought to keep the entire settlement and the concomitant benefits thereof intact while, at the same time, potentially having the lower court and/or this Court set aside those terms of the settlement with which she disagreed. There is, however, no law in West Virginia that permits a declaratory judgment action to be used as a collateral attack on a final civil judgment. Moreover, we agree with other jurisdictions that have expressly ruled that "[a]bsent special circumstances, an action for a declaratory judgment cannot be used as a substitute for a timely appeal...." *School Comm.*, 482 N.E.2d at 801; *accord Alabama Public Serv. Comm'n v. AAA Motor Lines, Inc.*, 272 Ala. 362, 131 So.2d 172, 177, *cert. denied* 368 U.S. 896, 82 S.Ct. 173, 7 L.Ed.2d 93 (1961) (stating that "declaratory judgment cannot be made a substitute for appeal"); *see Hospital Underwriting Group, Inc. v. Summit Health Ltd.*, 63 F.3d 486, 495 (6th Cir.1995)(citing *Shattuck v. Shattuck*, 67 Ariz. 122, 192 P.2d 229, 235–36 (1948)) (stating that under Arizona law, "judgments are not set aside by collateral declaratory judgment actions"); *Tri–State Generation and Transmission Co. v. City of Thornton*, 647 P.2d 670, 676–77 n. 7 (Colo.1982)(stating that "a party may not seek to accomplish by a declaratory judgment what it can no longer accomplish directly...."); *Fertitta v. Brown*, 252 Md. 594, 251 A.2d 212, 215 (1969)(stating that "[d]eclaratory proceedings

were not intended to and should not serve as a substitute for appellate review or as a belated appeal"). Accordingly, we hold that a declaratory judgment action can not be used as a substitute for a direct appeal.

### III.

### DECLARATORY JUDGMENT ACTION

■ As an ancillary matter, we address the Appellee's cross-assignment of error regarding whether the circuit court erred in finding that a justiciable controversy existed sufficient to support jurisdiction over the declaratory judgment action. The Appellee argues that although the circuit court dismissed the declaratory judgment actions, it found that jurisdiction was proper because a justiciable controversy existed between the parties. The Appellee maintains, however, that no current dispute exists between the parties as they merely have a difference of opinion as to the validity of the contested waivers. In contrast, the Appellant argues that the circuit court was correct in its finding that a justiciable controversy existed sufficient to support jurisdiction over the declaratory judgment action.

Before a circuit court can grant declaratory relief pursuant to the provisions of the Uniform Declaratory Judgment Act ("Act"), West Virginia Code §§ 55–13–1 to –16 (1994), there must be an actual, existing controversy. *See Cox v. Amick*, 195 W.Va. 608, 618, 466 S.E.2d 459, 469 (1995) (Cleckley, J., concurring); *Mongold v. Mayle*, 192 W.Va. 353, 358, 452 S.E.2d 444, 449 (1994). "To be clear, if there is no 'case' in the constitutional sense of the word, then a circuit court lacks the power to issue a declaratory judgment." *Cox*, 195 W.Va. at 618, 466 S.E.2d at 469. The rationale behind the justiciable controversy requirement is that the Act is "is designed to enable litigants to clarify legal rights and obligations *before* acting upon them." *Id.* (emphasis added). As the Supreme Court of Alabama stated in *AAA Motor Lines, Inc.*, "[t]he purpose of a declaratory judgment is to declare rights not theretofore determined and *is not to determine rights previously adjudicated.*" 131 So.2d at 177 (emphasis added).

Consequently, in deciding whether a justiciable controversy exists sufficient to confer jurisdiction for purposes of the Act, a circuit court should consider the following four factors in ascertaining whether a declaratory judgment action should be heard: (1) whether the claim involves uncertain and contingent events that may not occur at all; (2) whether the claim is dependent upon the facts;[7] (3) whether there is adverseness among the parties; and (4) whether the sought after declaration would be of practical assistance in setting the underlying controversy to rest. *See Cox*, 195 W.Va. at 619, 466 S.E.2d at 470.

Applying the above-mentioned factors enunciated by Justice Cleckley in his concurring opinion in *Cox* to the present case, it is evident that no justiciable controversy exited at the time the Appellant instituted the declaratory judgment action. This conclusion is based upon our previous determination that the Appellant's failure to appeal the final judgment order entered by the circuit court brought finality to that judgment, thereby ending any controversy or adverseness between the parties. *See id.* Simply stated, the declaratory judgment action, brought after the final judgment order, was being used to determine rights which had already been adjudicated. *See AAA Motor Lines, Inc.* 131 So.2d at 177. Had the Appellant originated the declaratory judgment action prior to the lower court's approval of the settlement resulting in a final judgment, she would have been in a better position to assert the presence of a justiciable controversy utilizing the four factors set forth in this opinion.

Consequently, while the circuit court incorrectly determined that the requisite justiciable controversy existed for purposes of granting relief under the Act, "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965). The circuit court ultimately dismissed the declaratory judgment action, upholding its previously entered final judgment order. Even though the circuit court relied upon the wrong reasoning, it nonetheless reached the right conclusion. It is for this reason that we do not reverse the circuit court's ruling.

Based on the foregoing opinion, the decision of the Circuit Court of Cabell County is hereby affirmed.

Affirmed.

---

7. As Justice Cleckley explained in his concurring opinion in *Cox*, "[c]ourts are more likely to find a claim is justiciable if it is of an intrinsically legal nature," which is not dependent upon a concrete factual situation that is not present in the record. 195 W.Va. at 619, 466 S.E.2d at 470.