566 S.E.2d 881

Geraldine WILLARD and Denzil Rhodes, Co–Executors of the Estate of Alma Whited, Deceased, Plaintiffs Below, Appellants

v.

Gary Eugene WHITED, Executor of the Estate of Delbert R. Whited, Deceased Defendant Below, Appellee.

No. 29327.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 7, 2001.

Submitted on Rehearing May 21, 2002.

Decided June 17, 2002.

Dissenting Opinion of Justice Maynard July 3, 2002.

Joseph C. Hash, Jr., Ravenswood, for Appellants.

Kennad Lee Skeen, Skeen & Skeen, Ripley, *for Appellee.*

McGRAW, Justice.

## I.

### BACKGROUND

On April 18, 1982, Alma and Delbert Whited married. It was the second marriage for both, and both were advanced in years. Over their lives they had amassed significant assets, most of which they kept separate during their marriage. Delbert and Alma did, however, have one or more accounts that they shared jointly. The briefs suggest that sometime in the summer of 1994, when Alma was diagnosed with a life-threatening condition, Alma had a will drawn up and opened one or more bank accounts jointly with some of her siblings.

After twelve years of marriage to Delbert, Alma died on December 8, 1994, at the age of 81. The will she had prepared that fall left $500 to her husband, the remainder of her estate going to her brothers and sisters. Delbert did not contest the will, but chose instead to avail himself of the protections of W. Va.Code § 42–3–1, *et seq.*, which allows a surviving spouse to claim a percentage of a deceased spouse's estate, rather than accepting what is bequeathed in a will. Some time passed before an appraisal of Alma's estate was prepared, but thereafter Delbert filed Jackson County Civil Action 96–C–49 to determine his elective share.

The court referred the matter to a special commissioner, and more time passed as the commissioner prepared his report. On June 9, 1998, three-and-a-half years after Alma's death, the special commissioner issued his report. In that report the commissioner found that Alma's probate estate (sums actually controlled or possessed by the estate) to be $117,801; he found Alma's reclaimable estate (sums or property that had passed from the estate to others within the statutory two-year time frame[1]) to be $84, 923. The commissioner then determined, based upon the years of marriage and the tables provided in the statute, that Delbert should receive 38% of the gross amount, which yielded a figure of $77,035 at the time of the report, plus certain sums of interest to be determined by cooperation of the parties. On June 9, 1998, the special commissioner issued a written report which stated, in pertinent part:

That judgment by award of the elective share should be rendered as follows:

Based on the numbers provided at the hearing and in all other forms offered by respective counsel, and upon calculation through the elective share formula, the amount should be $77,035.00, as of the date of the hearing.

In calculating the final amount due and owing, counsel must exchange proof of all interest earned on the accounts held by the estate in order that 38% percent [sic] of that income will also be paid as part of the elective share due Plaintiff.

The circuit court entered an order on August 6, 1998 confirming the special commissioner's report and ordering counsel to "carry out and implement the provisions of such Report and make settlement in accordance therewith." After a little more than a year, the parties still could not agree on how to implement the report. Appellee claims that appellants were simply unwilling to part with the money owed to Delbert; appellants claim that certain aspects of the order were unclear. Accordingly, counsel for Alma's estate moved the circuit court on August 27, 1999 to "fix and determine" certain matters pertaining to the commissioner's report.

Specifically, counsel for the estate claimed that only a portion of the assets required to pay Delbert were actually in the possession and control of the estate, and that the estate was entitled to a credit for all assets that Delbert had, or previously had, under his control. That is, counsel for the estate argued that the amount of the augmented estate, of which Delbert was owed 38%, should be reduced by any amount Delbert had already received when the joint accounts he had shared with Alma became his alone upon her death.

---

1. W. Va.Code § 42–3–1, *et seq.*

The court denied this motion by order dated October 6, 1999. As a result, the appellants filed a declaratory judgment action pursuant to W. Va.Code § 55–13–1, *et seq.*, our Uniform Declaratory Judgment Act. As they had argued previously in their motion, the appellants argued in the declaratory judgment action that the estate was entitled to a credit or credits for money that Delbert had already received, and that this matter had been left unresolved by the commissioner's report and the court's "final" order adopting the report.

In other words, the appellants claimed that Delbert, upon Alma's death, maintained control over certain bank accounts he had held jointly with his wife, and that these accounts never became part of Alma Whited's estate. Nonetheless, these accounts were apparently included in the special commissioner's calculations to determine the amount of Delbert Whited's elective share. The appellants asserted that because they never had control of these assets as the executors of Alma Whited's estate, the total amount of these assets should be offset or credited against Delbert Whited's elective share. Unmoved by this argument, the circuit court ruled that the case had already been adjudicated and dismissed the declaratory judgment action on June 7, 2000.

In their first appearance before this Court, counsel for Alma's estate renewed the argument that the estate was entitled to a set off and argued that the declaratory judgment action should be allowed because the parties needed additional guidance from the court in order to comply with the earlier order. This Court issued a preliminary opinion dated November 30, 2001, affirming the lower court's dismissal of the action. Since that time, the Court has granted the appellants' motion for rehearing, and the parties have provided additional briefs to the Court. For the reasons set forth below, we now reverse the decision of the Circuit Court of Jackson County.

## II.

## STANDARD OF REVIEW

■ We have stated previously that: "A circuit court's entry of a declaratory judgment is reviewed *de novo.*" Syl. Pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995).

As the *Cox* Court explained, "because the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo.*" *Id.* 195 W.Va. at 612, 466 S.E.2d at 463. Of course, the circuit court's ultimate resolution in the instant case was to dismiss the action.

In a more recent case citing *Cox, supra*, we also noted the standard we apply to the factual findings of a lower court in such actions:

> This Court has said that the standard of review for declaratory judgment is *de novo.* We have also said that, in those cases, "any determinations of fact made by the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard."

*Mountain Lodge Ass'n v. Crum & Forster Indem. Co.*, 210 W.Va. 536, 545, 558 S.E.2d 336, 345 (2001) (quoting *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995)) (internal citations omitted). Aware of these standards, we turn to our analysis of the instant matter.

## III.

## DISCUSSION

■ While the underlying dispute concerns the proper application of our elective share statute, this appeal turns upon the propriety of seeking a declaratory judgment below. Appellants argue that a declaratory judgment action is the only way for them to receive guidance from the lower court on an issue left unresolved in the first proceeding. Appellee argues that the special commissioner's report, as affirmed by the court's order, settled any and all of the matters for which appellants seek guidance, and that appellants missed their opportunity to dispute any facet of the commissioner's report. Appellants call our attention to W. Va.Code § 55–13–2, which reads:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any ques-

tion of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

W. Va.Code § 55–13–2 (1941). Appellees suggest that we look to the case of *Hustead on Behalf of Adkins v. Ashland Oil, Inc.*, 197 W.Va. 55, 475 S.E.2d 55 (1996) for guidance. In *Hustead*, we found that one could not use a declaratory judgment action in lieu of appealing a lower court's decision. "A declaratory judgment action can not be used as a substitute for a direct appeal." *Id.* at syl. pt. 3.

■ As we have noted on numerous occasions, once a court has adjudicated a matter, the doctrine of *res judicata* applies: "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Porter v. McPherson*, 198 W.Va. 158, 166, 479 S.E.2d 668, 676 (1996), quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552, 559 n. 5 (1979) (footnote omitted).

■ The thrust of the holding in *Hustead*, in the context of *res judicata*, is that a declaratory judgment action cannot be used as a substitute for appeal because only an appellate court has the authority to examine the underlying decision for error. Thus, in the absence of a novel claim or party, or some special circumstance that leaves the "final" decision from the initial proceeding incomplete, a trial court asked, in the guise of a declaratory judgment action, to reexamine the initial action would be barred by *res judicata.*

■ We believe now, as we did in *Hustead*, that generally a declaratory judgment action cannot be used to substitute for a direct appeal. When a lower court's final order truly has disposed of all contested matters, the appropriate recourse of a losing party is an appeal.

Before addressing the doctrine of *res judicata*, we note, as appellant suggests, that the statute authorizing declaratory judgment demands a liberal construction. The declaratory judgment act is designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." W. Va.Code § 55–13–12 (1941).

However, appellants urge us that an application of *Hustead* to this case does not foreclose appellants' efforts to obtain a declaratory judgment because their case contains special circumstances that may only be properly resolved in that fashion. In other words, because certain issues were not resolved below, *res judicata* does not bar appellants' action for declaratory judgment. The notion that "special circumstances" might allow a party to prevail in a declaratory judgment action in a circumstance where *res judicata* would otherwise bar that action, is not without support.

■ We agree with the general rule that a declaratory judgment action should not be used as a means of collaterally attacking a judge's order, but we also note that a case relied upon by the *Hustead* Court contemplated situations when this general rule might not apply. In the body of the opinion in *Hustead*, the Court cites as the basis for the rule the holding of *School Committee v. Commissioner of Education*, 395 Mass. 800, 482 N.E.2d 796 (Mass.1985). The specific ruling in *School Committee* cited in *Hustead* is as follows: "*Absent special circumstances,* an action for a declaratory judgment cannot be used as a substitute for a timely appeal. . . ." *Hustead*, 197 W.Va. at 61, 475 S.E.2d at 61 (emphasis added). We find it somewhat regrettable that syllabus point three of *Hustead* did not pick up the exception for "special circumstances." However, the absence of this language in *Hustead* does not mean that *Hustead* did not recognize that the general rule should not apply in the face of "special circumstances."

■ We by no means disavow our prior holdings that underline the importance of *res judicata* to protect the finality of judgments and to preserve scarce judicial resources:

[R]es judicata [or claim preclusion] serves to advance several related policy goals— (1) to promote fairness by preventing vexatious litigation; (2) to conserve judicial resources; (3) to prevent inconsistent deci-

sions; and (4) to promote finality by bringing litigation to an end. E.g., *Pitsenbarger v. Gainer*, 175 W.Va. 31, 330 S.E.2d 840 (1985); *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983).

*Mellon–Stuart Co. v. Hall*, 178 W.Va. 291, 298, 359 S.E.2d 124, 131 (1987). However, we note that, like any policy, our application of *res judicata* is not a mere theoretical or academic exercise. "In making this decision [whether *res judicata* bars an action] it should be remembered that res judicata is a principle of public policy and should be applied so as to give rather than deny justice." *Dore v. Kleppe*, 522 F.2d 1369, 1374 (5th Cir.1975) (citing A. Scott, *Collateral Estoppel by Judgment*, 56 Harv. L.Rev. 1, 29 (1942)); *see also, Wright, Miller & Cooper, Federal Practice and Procedure*, Jurisdiction 2d § 4415. We feel that when a purportedly final order fails to dispose effectively of the litigation at hand, or leaves the parties in need of instruction to carry out the will of the court, a declaratory judgment action may be a litigant's only recourse.

In response to appellants' arguments, appellee contends that we need not examine the law of declaratory judgments so closely to decide this case. Appellee states that whether or not some dispute now exists as to what credit appellants might deserve in relation to Delbert's joint accounts with Alma, the time has passed to consider such claims. That is, argues appellee, *res judicata* should bar the appellants' action. While we do not reject the underlying basis of appellee's argument, we find the circumstances of this case lead us to a different result.

We find it telling that the Declaratory Judgment Act expressly recognizes the likelihood that persons involved in the settlement of estates may need the relief provided for in the Act. W. Va.Code § 55–13–2 (1941). This is no doubt in contemplation of the fact that the administration and closing of an estate often involves unforseen questions arising in the process of executing the directions of the law applicable to estates. In other words, a lawsuit concerning the settlement of an estate is the sort of action where parties might need additional guidance to carry out the wishes of a court; this type of action is more likely than most to produce a "final" resolution by a court that does not adjudicate all the issues in the case.

■ We find this to be true in the instant matter. This case demonstrates to us that, while a declaratory judgment should not be used as a substitute for a direct appeal, some flexibility is needed when reconciling the doctrine of *res judicata* with the application of our Declaratory Judgment Act. Thus we hold that, in special and limited circumstances, where a purported final order leaves aspects of a case unresolved and parties in need of additional guidance, a declaratory judgment action may be used to clarify the meaning or application of a previously existing court order. In the case at hand, we find that the lower court erred in dismissing appellants' declaratory judgment action, and accordingly, reverse. Additionally, we find that the costs in this matter are to be assessed by each party paying his or her own costs.

### IV.

### CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Jackson County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

MAYNARD, J., dissented and filed opinion joined by DAVIS, C.J.

MAYNARD, Justice, dissenting.

(Filed July 3, 2002)

The majority casually disregards Court precedent and unnecessarily creates new law out of whole cloth. As a result, the Court's very important and traditional interest in promoting the finality of judgments is now in doubt.

The fact is this Court got it right in the first *Willard v. Whited* opinion (*Willard I*), 2001 WL 1525000 (Nov. 30, 2001), interestingly referred to as "a preliminary opinion" by the majority.[1] *Willard I* is based on

---

1. I must confess that when I voted to concur in *Willard I,* I did not realize that it was merely "a preliminary opinion."

sound and settled principles of *res judicata* and years of declaratory judgment law. The application of settled law to the facts of this case is straightforward and simple. As we explained in *Willard I*, "[u]nder the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Porter v. McPherson*, 198 W.Va. 158, 166, 479 S.E.2d 668, 676 (1996), *quoting Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552, 559 n. 5 (1979) (footnote omitted). Moreover:

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syllabus Point 4, *Blake v. Charleston Area Medical Center, Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997).

Applying this law to the instant facts plainly reveals that there was a previous final adjudication on the merits. In addition, the same parties participated in the original adjudication. Finally, the issue presented in the instant declaratory judgment action could have been resolved in the previous adjudication had it there been timely presented. The facts clearly illustrate that in the original adjudication, the special commissioner issued a written report on June 9, 1998. The appellants, who were represented by counsel, had ample opportunity to present evidence, cross examine witnesses, and object to the special commissioner's report. The appellants failed to exercise any of those three options. As a result, on August 6, 1998, the circuit court entered a final order approving the June 9 report. Accordingly, the application of the law to the facts mandates the conclusion that the appellants' declaratory judgment action is barred by *res judicata.*

Further, our law is clear that "[a] declaratory judgment action can not be used as a substitute for a direct appeal." Syllabus Point 3, *Hustead v. Ashland Oil, Inc.*, 197 W.Va. 55, 475 S.E.2d 55 (1996). In this case, the appellants did not appeal the circuit court's August 6, 1998 final order. Rather, they waited well over one year before launching a collateral attack against the final judgment. This is clearly impermissible under our law and it should have been rejected by this Court.

In *Hustead*, we explained that "West Virginia Rule of Civil Procedure 60(b) provides the only means for bringing a collateral attack on a final judgment in a. civil action." 197 W.Va. at 60, 475 S.E.2d at 60. In addition,

> one of the purposes of Rule 60(b) is to provide a mechanism for instituting a collateral attack on a final judgment in a civil action when certain enumerated extraordinary circumstances are present. When such extraordinary circumstances are absent, a collateral attack is an inappropriate means for attempting to defeat a final judgment in a civil action.

*Hustead*, 197 W.Va. at 61, 475 S.E.2d at 61. Because Rule of Civil Procedure 60(b) provides a mechanism for instituting a collateral attack on a final judgment, the new law crafted by the Court serves no meaningful purpose. Notably, the appellants failed to file a timely Rule 60(b) motion.

The appellants contend that the estate is entitled to a credit or credits for money that Delbert Whited had already received, and that this matter had been left unresolved by the commissioner's report and the court's final order. The difficulty with the appellants' argument is that this issue was apparent on June 9, 1998, when the special commissioner issued the report and on August 6, 1998, when the circuit court issued its final order which approved of the commissioner's report. The appellants are coexecutors of the estate of Alma Whited. Alma died on December 8, 1994, and the special commissioner did not issue his report until three-and-a-half years later. Therefore, unless the appellants breached their fiduciary duty as coexecutors, they certainly cannot claim sur-

prise or newly discovered evidence! Therefore, even if our precedent recognized a "special circumstances" exception to the rule that a declaratory judgment action cannot be used as a substitute for a direct appeal, such an exception does not aid the appellants. They have completely failed to show special circumstances in this case.

In sum, the majority cavalierly disregards settled precedent while creating new law that does not even apply to the facts of this case. The majority's opinion is nothing more than an attempt to aid parties who failed to avail themselves of the adequate legal mechanisms already in place. The result of all this is the obfuscation of well-settled principles concerning *res judicata* and the finality of judgments. For these reasons, I dissent.

I am authorized to state that Chief Justice DAVIS joins me in this dissent.