IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROBIN S. LINDEMUTH, DONALD E. LINDEMUTH,
DANIELLE LANDRISCINA, NANETTE M. REINTGES,
ROBERT REINTGES, KATHY D. RHYLS-WEXLER,
RAYMOND H. WEXLER, JENNIFER K. LIST,
LEONARD L. LIST, ELAINE WOLFE, ALAN P. WOLFE,
KATHRYN COLE, and JO ANN ABELL,**
**Plaintiffs Below, Petitioners**

**FILED**
**October 1, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-379**        (Cir. Ct. Berkeley Cnty. Case No. CC-02-2022-C-342)

**THE WOODS HOMEOWNERS ASSOCIATION, INC.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners[1] appeal an April 26, 2023, order of the Circuit Court of Berkeley County which granted respondent The Woods Homeowners Association, Inc.'s ("WHOA") motion to dismiss and a July 28, 2023, order denying petitioners' Motion to Alter or Amend.[2] The WHOA filed a timely response, and petitioners filed a timely reply. Petitioners are homeowners and mandatory members of the WHOA, which is a homeowner's association for the property owners of various residential communities. The crux of petitioners' allegations is that WHOA's board of directors violated the law and the declarations governing these communities in its attempt to finance the purchase of two golf courses and a spa facility for $5.5 million.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Petitioners are comprised of thirteen individuals who are homeowners and mandatory members of the WHOA.

[2] Petitioners are represented by Mark A. Sadd, Esq., Spencer D. Elliott, Esq., and Aaron C. Amore, Esq. The WHOA is represented by Susan R. Snowden, Esq.

1

Each of the petitioners is a property owner within one of the planned residential communities which comprise the WHOA. Petitioners filed their complaint seeking various declaratory judgments related to WHOA's prospective purchase and finance of two golf courses and a spa. Petitioners allege WHOA's board of directors purported to obtain approval of this transaction by following the law and the declarations governing these communities, but that WHOA actually did not follow these procedures and does not have the authority to proceed with these projects.

The Second Amended Complaint alleges thirteen causes of action which seek a variety of different declarations related to the WHOA and these planned communities, and one cause of action for a preliminary injunction enjoining the WHOA from purchasing the golf courses and spa. Petitioners allege they sought information regarding the planned purchases and asked WHOA's board of directors to comply with the relevant law and the declarations for each affected community, but that WHOA ignored both of these requests. Petitioners further allege that WHOA was preparing to enter into a sale and purchase agreement with the owner of the golf course property and with Wintrust Community Bank to finance the project, but that WHOA failed to properly gain authority to effectuate these transactions. Further, petitioners also specifically pled that WHOA's finance agreement with Wintrust was no longer viable and that the project was not going forward.

On March 30, 2023, WHOA filed its motion to dismiss pursuant to Rules 23.1 and 12(b)(6) of the West Virginia Rules of Civil Procedure and argued that petitioners' complaint did not constitute a derivative action by members of a corporation as required and that their complaint failed to state a claim upon which relief could be granted because no justiciable controversy was pled. In an order entered on April 26, 2023, the circuit court granted WHOA's motion to dismiss and held that (i) petitioners have direct versus derivative claims; (ii) that West Virginia Code § 31E-3-304(b)(1) (2002) does not authorize a derivative claim by a member; (iii) that petitioners, having only direct claims, failed to comply with the procedural obligations under Rule 3(a) of the West Virginia Rules of Civil Procedure; and (iv) that petitioners had no case or controversy to support injunctive or declaratory relief on the basis that the lender for the project withdrew its commitment letter. Next, on May 4, 2023, petitioners filed a Motion to Alter or Amend Dismissal Order and Request for Hearing under Rule 59(e) alleging there was evidence that WHOA intended to proceed with these projects. The circuit court denied that motion in an order entered on July 28, 2023. It is from these orders that petitioners now appeal.

Because the circuit court's ruling is based upon a motion to dismiss, our standard of review is de novo. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."). "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*,

2

160 W. Va. 530, 236 S.E.2d 207 (1977) (citation omitted). With this standard in mind, we turn to the arguments at issue.

On appeal, petitioners assert five assignments of error. First, petitioners argue the circuit court erred in holding there was no case or controversy based on the financial lender's withdrawal of its commitment. Article VIII, Section 6 of the West Virginia Constitution requires "a justiciable case or controversy—a legal right claimed by one party and denied by another—in order for the circuit court to have subject matter jurisdiction." *State ex rel. Healthport Techs., LLC v. Stucky*, 239 W. Va. 239, 242, 800 S.E.2d 506, 509 (2017). This means that the party asserting a legal right must have standing to assert that right, and the Supreme Court of Appeals of West Virginia has defined "standing" as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Id.*

Here, petitioners' Second Amended Complaint seeks various declaratory judgments. As the Supreme Court of Appeals of West Virginia held in *City of Bridgeport v. Matheny*, "[a] declaratory judgment action is a proper procedural means for adjudicating the legal rights of parties to an existing controversy that involves the construction and application of a statute." 223 W. Va. 445, 450, 675 S.E.2d 921, 926 (2009). "Before a circuit court can grant declaratory relief pursuant to the provisions of the Uniform Declaratory Judgment Act ("Act"), . . . there must be an actual, existing controversy." *Hustead on Behalf of Adkins v. Ashland Oil, Inc.*, 197 W. Va. 55, 61, 475 S.E.2d 55, 61 (1996). "[I]f there is no 'case' in the constitutional sense of the word, then a circuit court lacks the power to issue a declaratory judgment." *Id.* In deciding whether an actual or justiciable controversy exists which would confer jurisdiction upon a trial court, the following four factors should be considered:

> [I]n deciding whether a justiciable controversy exists sufficient to confer jurisdiction for purposes of the [Uniform Declaratory Judgment] Act, a circuit court should consider the following four factors in ascertaining whether a declaratory judgment action should be heard: (1) whether the claim involves uncertain and contingent events that may not occur at all; (2) whether the claim is dependent upon the facts; (3) whether there is adverseness among the parties; and (4) whether the sought after declaration would be of practical assistance in setting the underlying controversy to rest.

*Id.* at 62, 475 S.E.2d at 62 (citation omitted). Further, a party seeking a declaratory ruling lacks standing if said party has not "suffered an 'injury-in-fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical." *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 94, 576 S.E.2d 807, 821 (2002).

The analysis here begins with the language of the Second Amended Complaint. Petitioners argue that their claims were misrepresented by the circuit court, but the

3

language of the Second Amended Complaint is clear. All the claims pled here, with the exception of the injunction request, seek declaratory relief related to the proposed project, and it does not appear there is even an injury since the financier withdrew its commitment. Petitioners explicitly pled that the financier withdrew the funds, and they state as follows: "[o]n information and belief, the agreement with Wintrust is no longer a viable option according to WHOA's community website postings." Petitioners further attached a WHOA newsletter to the complaint which noted that "[a]s sometimes happens in complex deals, changes in the structure of the transaction will occur. In this case, we [WHOA] are no longer working with the bank [Wintrust Community Advantage] from which we obtained the first Commitment Letter."

At this stage in the case, this Court must assume that all allegations are true. Syl. Pt. 1, *Wiggins v. E. Associated Coal Corp.*, 178 W. Va. 63, 357 S.E.2d 745 (1987). Petitioners argue that the circuit court failed to take their allegations as true, but it is petitioners' own complaint and the allegations made in that document that support the circuit court's conclusion here. Based on petitioners' own language, it appears that this project is no longer going forward. Their entire complaint is based on an alleged illegal vote which led to the approval of the purchase and finance of the golf courses and spa. Because this project is no longer going forward, as petitioners specifically pled, petitioners' injury is hypothetical.[3] The circuit court did not have jurisdiction to hear this case, and its ruling was not in error.

Because we find that the circuit court was correct in its determination that petitioners lacked standing, we need not consider petitioners' assignments of error two through four which relate to additional bases for dismissal. However, petitioners' assignment of error five asserts that the circuit court erred in finding that the evidence offered with petitioners' motion to alter or amend did not show there was a live case or controversy. Because this assignment is intrinsically related to assignment of error one, we will also consider these arguments.

Under assignment of error five, petitioners argue they filed a motion to amend or alter and produced new documentary evidence which shows there is a viable case or controversy and that the circuit court erred when it denied this motion. Again, we find no error in the circuit court's ruling. None of the evidence produced by petitioners was sufficient to show that their claims were certain. Their claims are "uncertain and contingent events that may not occur at all." *Hustead*, 197 W. Va. at 62, 475 S.E.2d at 62. The Supreme Court of Appeals of West Virginia is clear that "West Virginia courts do not issue advisory opinions" and no justiciable case or controversy exists here. *State ex. rel. Perdue v.*

---

[3] We observe that the WHOA clearly argues in the record below that this project is no longer going forward, but WHOA does not use such certain terms in its briefing here.

*McCuskey*, 242 W. Va. 474, 478, 836 S.E.2d 441, 445 (2019). Accordingly, because there is no case or controversy here and petitioners' injury is hypothetical, we affirm.

Affirmed.

**ISSUED:** October 1, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Daniel W. Greear


Judge Charles O. Lorensen, not participating.