## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Connor McLaughlin, administrator
of the Estate of Peter James McLaughlin,
Plaintiff Below, Petitioner**

**vs) No. 16-0952** (Berkeley County 14-C-814)

**City of Martinsburg,
Defendant Below, Respondent**

**FILED**

**September 1, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Connor McLaughlin, administrator of the Estate of Peter James McLaughlin, by counsel Paul G. Taylor, appeals the July 29, 2016, order of the Circuit Court of Berkeley County granting summary judgment to Respondent the City of Martinsburg. Respondent, by counsel Keith C. Gamble and Nathan A. Carroll, filed its response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Peter James McLaughlin ("the decedent") was a patient at a Martinsburg, West Virginia, hospital, where he voluntarily committed himself, and was taking prescription medications under doctors' orders. On the evening of December 28, 2013, the decedent exited the hospital and walked to a Burger King restaurant in Martinsburg.[1] There, he exhibited allegedly abnormal

---

[1] The decedent's medical records show that he requested to be discharged and that at 3:48 p.m. on December 28, 2013, the decedent's treating physician, Dr. Murphy, noted that the decedent "appeared to be in control of his actions . . . [and] was alert and completely oriented." In his discharge notes, Dr. Murphy noted that the decedent "firmly denied any suicidal or homicidal ideation and showed no signs of responding to internal stimuli . . . He did not meet criteria for involuntary commitment." Petitioner filed a separate action in the Circuit Court of Berkeley County against Christopher J. Murphy, M.D., and University Healthcare Physicians, Inc., d/b/a University Behavioral Medicine and Psychiatry alleging that Dr. Murphy was "grossly negligent in that he failed to perform a duty owed to the [d]ecedent by improperly discharging [him] . . . ." The circuit court granted those defendants' motion to dismiss and denied petitioner's (continued…)

1

behavior that prompted an employee to call 911 for a welfare check. Martinsburg Police Officers responded to the 911 call and made contact with the decedent. Those officers determined that the decedent did not present them with probable cause on which they could exercise their police authority to seize him against his will or over his objection. Further, the responding officers agreed that the decedent did not ask for any help related to a mental illness. Emergency dispatchers received a second call shortly thereafter from Ms. McLaughlin, and law enforcement responded but were unable to make contact with the decedent because he had left the area identified by Ms. McLaughlin.[2] The decedent apparently left on foot walking along a public roadway, where he was struck by an automobile while walking on the road. He was pronounced dead at the scene of the accident.

Petitioner filed his initial complaint against respondent on December 12, 2014, and he filed his second amended complaint against respondent on May 7, 2015, consisting of two counts alleging that respondent was negligent and that its negligence resulted in the death of the decedent. Petitioner also sought a writ of mandamus against respondent to compel it to undergo a comprehensive review of its police practices. With regard to his negligence claims, petitioner asserts that respondent breached a general duty pursuant to West Virginia Code §§ 8-12-5 and 8-14-1 to provide adequate police protection to the decedent when officers failed to place him in some form of protective custody after interacting with him on the evening of his death. On March 6, 2015, the circuit court entered an order granting in part and denying in part respondent's motion to dismiss the mandamus action, and dismissing with prejudice Count II of that complaint. Respondent filed an answer on May 19, 2015.

On or about January 19, 2016, petitioner filed his "Motion for Declaratory Judgment to Resolve Issues of Constitutional and Statutory Construction Applicable to this Civil Action." Therein, he asked the circuit court to "issue and declare that the construction of certain sections of the Constitution of West Virginia, Statutes of West Virginia, and decisional case law . . . are applicable to [respondent] and its Police Department and officers, . . ." Petitioner set forth nine issues he wished to have addressed, which generally relate to the duties of respondent and respondent's police officers. Those requested declarations also ask that the circuit court declare that respondent and its officers treat persons with mental illness, drug addiction behavior, and other irrational public behavior as a special class of citizens that need special services outside of the "arrest-non-arrest-separation of parties-sent on their way" standard responses.

Respondent filed a motion for summary judgment on June 6, 2016. On July 29, 2016, the circuit court entered its order granting summary judgment to respondent. In that order, the circuit court made the following relevant findings: a) the City of Martinsburg is clearly a political subdivision and is entitled to all protections and immunities provided under the West Virginia Governmental Tort Claims and Insurance Reform Act; b) petitioner's claim alleging that

---

motion to alter or amend its memorandum opinion and order. That matter is currently being appealed to this Court in Case No. 17-0453.

[2] It is unclear from the briefs and the record whether Ms. McLaughlin was the decedent's wife or former wife on December 28, 2013.

respondent's method of providing police protection caused the decedent's death falls squarely within the immunity provided under West Virginia Code § 29-12A-5(a)(5); c) petitioner cannot prove any duty as a result of the "public duty" doctrine; and d) respondent is entitled to summary judgment in petitioner's wrongful death action relating to the method and manner of providing police protection because it is barred by the Governmental Tort Claims Act and not subject to the special duty rule. The circuit court granted respondent's motion for summary judgment and denied petitioner's motion to alter or amend the order denying his motion for leave to seek declaratory judgment. It also denied petitioner's motion to compel discovery served out of time.[3] Petitioner appeals from that order.

"A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994). Further,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. Pt. 4, *id.*

"'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *Carr v. Michael Motors, Inc.,* 210 W. Va. 240, 557 S.E.2d 294 (2001). As we have also explained,

> [r]oughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. Pt. 5, *Jividen v. Law*, 194 W. Va. 705, 461 S.E.2d 451 (1995).

> Stated another way, "[i]f the evidence favoring the nonmoving party is 'merely colorable . . . or is not significantly probative'" a genuine issue does not arise, and summary judgment is appropriate. *Williams* [*v. Precision Coil, Inc.*]*,* 194 W.Va. [52,] at 60-61, 459 S.E.2d [329,] at 337-38 (quoting *Anderson* [*v. Liberty Lobby, Inc.*]*,* 477 U.S. [242,] at 249-50, 106 S.Ct. [2505,] at 2511 (citations omitted in original)).

---

[3] The circuit court noted that while petitioner had filed a motion to file affidavits out of time, because petitioner withdrew that motion it was denied as moot.

*Jividen*, 194 W. Va. at 713-14, 461 S.E.2d at 459-60. In addition, "'[a] circuit court's entry of a declaratory judgment is reviewed *de novo*.' Syl. Pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995)." Syl. Pt. 1, *Willard v. Whited*, 211 W. Va. 522, 566 S.E.2d 881 (2002).

On appeal, petitioner asserts nine assignments of error. Because they generally fall into six categories, we will address them in that manner. At the outset, he contends that respondent was not immune because it owed a special duty to the decedent pursuant to the special duty exception of the Governmental Tort Claims and Insurance Reform Act ("the Act"). Pursuant to West Virginia Code § 29-12A-1, the purposes of the Act "are to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." This Court has previously set forth the following with regard to the special duty exception to the Act:

> *W.Va.Code,* 29-12A-5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection[,]" is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual.

Syl. Pt. 8, *Randall v. Fairmont City Police Dept.*, 186 W. Va. 336, 412 S.E.2d 737 (1991). Further, "[i]f a special relationship exists between a local governmental entity and an individual which gives rise to a duty to such individual, and the duty is breached causing injuries, then a suit may be maintained against such entity." Syl. Pt. 3, *Benson v. Kutsch*, 181 W. Va. 1, 380 S.E.2d 36 (1989).

Petitioner argues that there is a mandatory requirement that the determination of the existence of a special duty to protect an individual from a local government entity's negligence in the performance of a nondiscretionary governmental function be left to the trier of fact. He contends that he satisfied the requirements set forth in syllabus point two of *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989), which are as follows:

> To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking.

In support of his argument, petitioner points to the call to 911 by the Burger King employees to

which several officers responded. He argues that it is clear that the officers' inaction could lead to harm and that the decedent was a danger to himself when he encountered those officers. However, there is no dispute that the officers made contact with petitioner or that law enforcement made contact with the hospital and the hospital confirmed petitioner's account that he had not left improperly. He also references the call made to 911 by Ms. McLaughlin when the decedent was in a Waffle House restaurant as a request for help from respondent.

Importantly, the decedent did not contact law enforcement officers to request help, and there is no indication in the record that he wanted assistance from the responding officers. While we have held that "[t]he question of whether a special duty arises to protect an individual from a local governmental entity's negligence in the performance of a nondiscretionary governmental function is ordinarily a question of fact for the trier of the facts[,]" we have not held that such question is always a question for the trier of facts. Syl. Pt. 3, *Wolfe*. Respondent argues that no reasonable jury could have found that the 911 calls between third-parties and emergency services created a special duty between respondent and the decedent, particularly in light of the fact that the officers did not have knowledge that their failure to act would result in harm to restaurant employees or the decedent. With regard to the second call, there appears to be no dispute that officers were unable to locate the decedent following that call. Thus, the decedent could not have had a reasonable expectation that officers would provide assistance to him at that time. As respondent sets forth, there is no medical evidence or testimony in the record that suggests that the decedent was suffering from a mental illness when he interacted with the officers. The officers' accounts of their interactions with petitioner outside of the Burger King and the fact that hospital personnel confirmed petitioner's account of his voluntary release from the hospital bolster respondent's argument on that point. For these reasons, we find that under the facts of this case the circuit court did not err in granting summary judgment to respondent or its finding that respondent did not owe the decedent a special duty pursuant to *Wolfe*.

Petitioner next alleges that statutory and constitutional duties required respondent to protect the decedent. In support of this argument, petitioner relies on West Virginia Code § 8-12-5(44), which provides that the powers and duties of a municipality are "[t]o protect and promote the public morals, safety, health, welfare and good order." He also looks to our holding in *State ex rel. Hawks v. Lazaro*, 157 W. Va. 417, 438-39, 202 S.E.2d 109, 123-24 (1974), where we stated as follows:

> The State is also entitled to prevent a person from injuring himself in the very specific sense of doing physical damage to himself, either actively or passively. Therefore, when it can be demonstrated that an individual has a self-destructive urge and will be violent towards himself, or alternatively that he is so mentally retarded or mentally ill that by sheer inactivity he will permit himself to die either of starvation or lack of care, then the State is entitled to hospitalize him. The State would also be permitted, under the Constitution, to hospitalize a person who suffers from a mental illness or retardation which is likely to produce some form of injury other than direct physical injury, if the type of injury were definitely ascertainable, and if the State had a treatment program which it could be demonstrated offered a reasonable likelihood of ameliorating the illness or condition.

5

Petitioner contends that respondent's policies providing only for arrest, non-arrest, separation of the parties, or being sent on their way are insufficient to satisfy respondent's constitutional and statutory duties.

However, according to the record, upon the arrival of officers following the call to 911 by the Burger King employees, they found the decedent to have a normal physical appearance and did not observe any actions that would lead them to believe that the decedent was under the influence of any intoxicants or medications. At least one officer described the decedent's speech as "completely coherent" and testified that he was rational. Further, he gave officers the name and telephone number of a friend he said that he was waiting on for a ride. Corporal Mary Beth Cole testified that she did not observe the decedent sweating, appearing tense, or exhibiting agitation. Further, she testified that the decedent was cooperative and did not seem disoriented. Patrolman First Class William Staub Jr. testified that following the Burger King call, he found the decedent to be clothed and not exhibiting any signs of severe medical issues. When dispatch was unable to reach the friend that was supposed to be picking up the decedent, dispatch tried to reach Ms. McLaughlin but was unable to do so. Patrolman Staub confirmed that the decedent appeared to be coherent and rational, and the decedent was able to provide understandable responses to questions. When asked what "observable medical conditions" the decedent appeared to be experiencing at the time of the interaction near Burger King, Patrolman Staub further testified there was "[n]othing. You know, it wasn't really a crisis situation. It was just somebody that was there that somebody asked to be checked on." He further specifically stated that the decedent "wasn't causing a disturbance, he wasn't irrational, he wasn't loud, he wasn't causing a scene. He was cooperative and spoke to us and answered our questions." Petitioner has not pointed to any testimony or evidence that indicates that the decedent exhibited any behavior to the officers that he would do physical damage to himself or satisfy any of the criteria this Court set forth in *Lazaro*. Therefore, under the specific facts of this case, petitioner's policy argument is irrelevant. For these reasons, we find that the circuit court did not err in granting summary judgment to respondent on this ground.

Petitioner also argues that whether the decedent directly requested help is a question of fact for the jury. We note at the outset that petitioner fails to cite a single case or statute to support his argument. To bolster his assertion, petitioner directs this Court to the affidavits of two restaurant employees working when the decedent was in those restaurants on December 28, 2013; those affidavits were notarized approximately three weeks after the close of discovery. The affidavit of Ashely Loy, an assistant manager at Burger King, sets forth her personal observations on the evening of December 28, 2013, related to the decedent. It does not appear from that affidavit that she personally heard any interaction between the decedent and law enforcement officers that evening, as she states that she watched that interaction from inside the restaurant while that interaction was in the parking lot of a different nearby restaurant. The other affidavit was from Carrie Tiller, who was employed at the Waffle House on the evening that the decedent came in. While she states therein that the decedent "acted psychotic and out of his mind[,]" nothing in her affidavit supports petitioner's contention that the decedent in any way asked for help from respondent. Instead, her affidavit supports the fact that police arrived at the restaurant after they were contacted and that the officer then proceeded in the direction of the decedent's last known location.

6

Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires a petitioner's brief to "contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. . . ." In addition to the timeliness issues of the affidavits and petitioner's failure to cite any legal authority to support his argument, the affidavits do not rise to the level necessary for a reasonable juror to find that the decedent directly requested help from respondent. Further, while petitioner did not cite to them, none of the depositions of the officers included in the record before this Court evidence petitioner directly requesting help from them aside from a request that officers contact his friend and/or Ms. McLaughlin.

Petitioner argues that other certain issues were questions of fact to be decided by a jury, rather than decided on summary judgment. While he asserts that the existence of an affirmative duty is such a question of fact, his three sentence argument simply refers back to the arguments set forth in his assignment of error related to respondent's constitutional and statutory duties. He also contends that the question as to whether the decedent was in imminent danger was a question of fact for the jury. Again, petitioner fails to cite a single case, statute, or rule of law in support of this assertion. Therefore, we repeat our reference to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure set forth above. Further, petitioner's argument is contrary to our precedent. As we previously stated,

> [t]he determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law.

Syl. Pt. 5, *Aikens v. Debow,* 208 W. Va. 486, 541 S.E.2d 576 (2000).

Petitioner further asserts that the impact and relevance of the decedent's demeanor is a question of fact for the jury, pointing again to the affidavits submitted by the restaurant employees, neither of which heard any interaction between the decedent and law enforcement officers. He correctly points out that we previously stated that "when a party can show that demeanor evidence legally could affect the result, summary judgment should be denied." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 59, 459 S.E.2d 329, 336 (1995). However, he ignores the requirement that "the nonmoving party must nonetheless offer some 'concrete evidence from which a reasonable . . . [finder of fact] could return a verdict in . . . [its] favor' or other 'significant probative evidence tending to support the complaint.'" *Id.* at 60, 337 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Rather than offer the required concrete evidence, petitioner offers only the two untimely affidavits from restaurant employees who, as noted above, could not hear the decedent's interaction with law enforcement officers. In addition, the affidavit of the Waffle House employee could not lead a reasonable juror to find in favor of petitioner because it is undisputed that the officers were unable to locate the decedent at the Waffle House or after searching in that area. Therefore, we find that the circuit court did not err in finding there were no genuine issues of material fact to be presented to a jury related to these arguments.

Next, he argues that the circuit court committed reversible and prejudicial error by

7

denying his motion for declaratory judgment on the basis of Rule 15 of the West Virginia Rules of Civil Procedure. He asserts that the circuit court made "the bogus and unstudied conclusion that this declaratory judgment motion could be made and filed only by leave of court as a Rule 15(a) amendment to a pleading . . . ." Respondent asserts that while the circuit court's ruling was correct, even if the circuit court erred, the same was harmless error. Rule 15(a), in relevant part, provides as follows:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . .

The scheduling order in the instant matter required that all pleadings be amended no later than March 23, 2015, but "Petitioner's Motion for Declaratory Judgment to Resolve Issues of Constitutional and Statutory Construction Applicable to this Civil Action" was not filed until January 20, 2016. The circuit court treated the motion as one for leave to amend the complaint and denied the same under Rule 15. The circuit court also denied petitioner's motion, finding that petitioner lacked standing to assert such action.[4] Respondent contends that the circuit court's determination was proper because there is no causal connection between petitioner's injury and his declaratory issues. In his "motion" for declaratory judgment before the circuit court, petitioner identified the alleged causal connection "between the injury and the conduct of the City of Martinsburg Police Department, and its officers, the basis of which is their negligence and negligent administration and supervision, and operational performance." Therein, petitioner requests that the circuit court make nine declarations, generally regarding respondent's police department's duties to individuals and criticizing respondent's policies and procedures. In its March 28, 2016, "Order Denying Plaintiff Leave to Seek Declaratory Judgment," the circuit court specifically found that petitioner lacked standing, there was no justiciable controversy, and petitioner failed to prove the relief requested. The circuit court also cited West Virginia Code § 55-13-6, which provides as follows: "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Based on these findings, we find

---

[4] Syllabus point five of *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002), states that

> [s]tanding is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

8

that the issue of standing was sufficient to deny petitioner's motion for declaratory judgment.

For these reasons, we find no error in the circuit court's grant of summary judgment to respondent or the denial of his motion for declaratory judgment in the same underlying action.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  September 1, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker